**J. C. WHITE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Leo KUBIK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 18894, 18897.**

United States Court of Appeals Eighth Circuit.

May 20, 1968.

---

James A. Pratt, Council Bluffs, Iowa, for appellant, J. C. White.

Raymond E. Pogge, Council Bluffs, Iowa, for appellant, Leo Kubik; Thomas L. Root, Council Bluffs, Iowa, on the brief.

Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, for appellee; James P. Rielly, U. S. Atty., and Claude H. Freeman, Asst. U. S. Atty., Des Moines, Iowa, on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

These appeals are from the judgments of conviction entered upon jury verdicts finding the appellants guilty of the offenses charged in the indictment. Counts I, II and III of the indictment involve only appellant Kubik. Count I charged that he was a retail dealer in liquors and did not provide and keep in his place of business a record in book form of all distilled spirits received, in violation of 26 U.S.C. §§ 5124, 5603. Count II of the indictment alleged that Kubik, being a person who sold and offered for sale distilled spirits, possessed a liquor bottle in which had been placed distilled spirits other than those contained in the bottle at the time of stamping, in violation of 26 U.S.C. §§ 5301, 5606. Count III charged that Kubik knowingly failed and refused to produce, upon request made by duly authorized officers of the Internal Revenue Service, records showing the source and quantity of all distilled spirits received, in violation of 26 U.S.C. §§ 5124, 5603. Count IV alleged that appellants Kubik and White willfully and knowingly conspired together and with other co-conspirators to carry on the business of a retail liquor dealer without keeping records of receipts and without conforming to other regulations and laws relating to the business of a retail liquor dealer in the purchase of liquor from dealers who had not paid the wholesale liquor dealer tax, in violation of 26 U.S.C. § 5117(a) and 18 U.S.C. § 371.

Kubik was sentenced to a one year term of imprisonment on each count, the sentences to run concurrently, and fined $1,000.00. White was fined $250.00 and sentenced to a term of imprisonment for one year subject to the condition that after he has been confined in a jail-type or treatment institution for ninety days, execution of the remainder of the sentence would be suspended and he would be placed on probation for a period of two years.

The evidence relating to all counts is undisputed. Appellants do not challenge the sufficiency of the evidence except as to Count IV. A summary discussion of the pertinent facts will therefore suffice.

On April 26, 1962 the Carter Lake Fraternal Order of Iowans, Carter Lake, Iowa, was incorporated as a non-profit corporation pursuant to the laws of Iowa. The articles of incorporation stated that the purpose of the corporation was to provide a meeting place for group discussion on political subjects

and to promote Carter Lake, Iowa. The latter is a small community in the extreme western part of Iowa, almost adjacent to the city of Omaha, Nebraska.

There is no evidence to indicate that the stated purposes of the corporate franchise were ever accomplished. To the contrary, the record is replete with evidence that appellants used the corporation as a vehicle for the commission of the offenses charged in the indictment.

After its formation the corporation transacted business as a "bottle club" at a new location in Carter Lake under the name "Shangrila Club." Ostensibly, the night club was operated by the corporation, but Kubik was its manager and, for all practical purposes, the owner. Membership cards were freely distributed which entitled members to enter the club and participate in its facilities, which included a bar, pool tables and a swimming pool.

The activities of Kubik came under suspicion in February, 1964. Finally, on August 21, 1964, LaVerne E. Gooder, an agent of the United States Treasury Department, Bureau of Narcotics, in the company of a businessman known to Kubik, gained admittance to the club.[1] After their admittance, agent Gooder and his companion freely purchased drinks containing distilled spirits. The August 21st performance was repeated on numerous occasions by different agents of the Alcohol and Tobacco Tax Division of the Treasury Department. On each visit the agents gained undercover entry for the purpose of ascertaining whether the club's operations conformed to the law. Although Kubik became acquainted with the agents, he was unaware of their official status. These agents ascertained that whiskey was served from unmarked decanters and sold to any and all occupants of the club for $1.00 per drink.

At 3:00 A.M. on February 6, 1965 agent David O. Finney, a special investigator for the Alcohol and Tobacco Tax Division, accompanied by investigator John Daley of the same Unit, gained admission to the Shangrila Club. After being served drinks, they approached Kubik, identified themselves as agents of the Internal Revenue Service and asked to see his retail liquor dealer records. Kubik responded that he had no records of liquor purchases, but subsequently gave the agents a slip of paper, which was a signed retail order form for three bottles of liquor. The agents' inspection of the premises disclosed three bottles of liquor behind the bar.

Upon inquiry as to whether he kept any other distilled spirits on the premises, Kubik replied that he had more liquor in his car. He then voluntarily opened the trunk of his Cadillac convertible and permitted the agents to inspect its contents. Inside were twenty-nine bottles of distilled spirits. After they had observed the contraband, the agents then arrested Kubik and seized the liquor.

Neither of the appellants testified in his own behalf. Their only witness, a former member of the Carter Lake, Iowa police force, testified that he frequented the Shangrila Club nightly, but that he never saw liquor in the club nor observed Kubik selling liquor.

The primary contention advanced by Kubik is that evidence was admitted "in violation of the Fourth, Fifth and Sixth Amendments to the United States Constitution." Pinpointing this broad contention, Kubik argues that the failure of the investigating agents to warn or advise him of his rights as enunciated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rendered his statements to the investigating agents inadmissible at trial.

---

1. The record discloses that both Kubik and White served as watchmen at the entrance to the club, and that they would admit only members, or persons favorably known to them.

■ The issue as to the admissibility of Kubik's statements was timely raised in a motion to suppress all statements made during the course of the investigation and the liquor seized after the arrest. The district court, Honorable Roy L. Stephenson, conducted a plenary hearing on the motion. In denying it he stated:

"A suspect's Fifth Amendment privilege against self-incrimination, and his Sixth Amendment right to the assistance of counsel to protect that privilege come into play as soon as law enforcement officers take him into custody or otherwise restrict his freedom of action in any significant way. The requirements of a warning of constitutional rights are confined to situations involving custodial interrogation. Miranda v. State of Arizona, 384 U.S. 436, 444, 478–479, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)."

Judge Stephenson proceeded to find as a fact that Kubik's statements were made prior to his arrest, and before he had been deprived of his freedom of action in any significant way. The court also declined to suppress the twenty-nine bottles of liquor seized from Kubik's car immediately after his arrest on the ground that he had voluntarily consented to the search.

We fully agree with the district court's findings of fact and conclusions of law and hold that Judge Stephenson properly denied the motion to suppress.

The Miranda warnings have not been extended to a pre-custody Internal Revenue inquiry. We so held in Frohmann v. United States, 380 F.2d 832, 835–836 (8th Cir. 1967), cert. denied, 389 U.S. 976, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967), where Judge Blackmun cited, as supporting authority, a number of court of appeals and district court opinions. See, e.g., United States v. Maius, 378 F.2d 716, 718–719 (6th Cir.1967), cert. denied, 389 U.S. 905, 88 S·Ct. 216,

19 L.Ed.2d 219 (1967); United States v. Mancuso, 378 F.2d 612, 619 (4th Cir. 1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968); Kohatsu v. United States, 351 F.2d 898, 902 (9th Cir. 1965), cert. denied, 384 U. S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966). Accord, Spinney v. United States, 385 F.2d 908, 910 (1st Cir.1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968). The same rule has been applied to a pre-custody investigation conducted by agents of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. United States v. Agy, 374 F.2d 94, 95 (6th Cir. 1967), cert. denied 389 U.S. 881, 88 S.Ct. 123, 19 L.Ed.2d 175 (1967).

We are cognizant of Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L. Ed.2d 381, decided by the Supreme Court on May 6, 1968. This decision extends the Miranda precepts to the area of civil tax investigations and holds that under appropriate circumstances the warnings must be given prior to interrogation by the investigating agents.

In Mathis the defendant's conviction rested partially on incriminating statements and documents obtained from him during a tax investigation conducted in a state prison. The Internal Revenue agents had failed to give the Miranda warnings. In reversing Mathis' conviction of knowingly filing false claims for tax refunds against the government, the Supreme Court rejected the government's argument that Miranda was inapplicable on the grounds that (1) the questions asked were part of a routine tax investigation and (2) defendant had not been put in jail by the agents questioning him, but was there for an entirely separate offense.

In disposing of these contentions the Court stated:

"These differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." 390 U.S. at 4, 88 S.Ct. at 1505 (Emphasis added.)

That the in-custody status of *Mathis* was the controlling factor of the Court's opinion is clear from the following language:

"We reject the contention that tax investigations are immune from the *Miranda* requirements for warnings to be given *a person in custody*.

The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights. We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody. In speaking of 'custody' the language of the *Miranda* opinion is clear and unequivocal:

'To summarize we hold that when an individual is taken into custody, or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is in jeopardy.' 384 U.S., at 479 [86 S.Ct. at 1630]." 390 U.S. at 5, 88 S.Ct. at 1505 (Emphasis added.)

In view of the significant dissimilarity in facts surrounding the interrogation in *Mathis* we are constrained to conclude that that decision is not controlling in the present case.

■ The circumstances which precipitated Kubik's motion to suppress are focused chiefly on the events that transpired on October 27, 1964 in Kubik's Shrangrila Club. On this occasion agent Finney, who had previously purchased alcoholic beverages at the Shangrila Club in an undercover status and had observed the sale of distilled spirits from unmarked decanters, revealed his official status to Kubik and exhibited his credentials. In the ensuing conversation, Finney made inquiry concerning Kubik's retail liquor dealer tax stamp and advised him that federal law required that the stamp be posted at a conspicuous place inside the club. Kubik removed the stamp from his person and attached it to the rear portion of the bar. Kubik admitted that he stored his liquor in the trunk of his car and that he made his purchases from retail liquor stores. Finney read pertinent provisions of the Internal Revenue Code to Kubik and informed him that he was required to purchase liquor from a wholesale liquor dealer who had paid the federal tax. Kubik conceded that he did not keep records of his purchases, whereupon he was advised by Finney to keep a record in book form of all distilled spirits, wine or beer purchased from a wholesaler or retain the original invoices. Kubik indicated that he sometimes poured liquor into decanters to facilitate the distribution of drinks. Finney warned Kubik not to pour liquor into unmarked containers which did not show the payment of the federal tax and indicated that such containers would be subject to seizure on suspicion of containing non-tax paid whiskey.

Kubik at this time was neither arrested nor was he in any respect deprived of his freedom of action. He was in familiar surroundings. The record indicates that Finney was making a conscientious effort to inform Kubik of the requirements of the law and of the necessity of compliance therewith. Kubik displayed a cooperative attitude. He was fully aware that Finney was an agent of the Internal Revenue Service and that his purpose was to investigate the manner in which the club had been and was being operated. Kubik's disclosures to Finney were entirely voluntary, and were not induced by coercion, fraud or misrepresentation. In our view the events that transpired were part of a pre-custody routine investigation by a diligent federal agent to determine whether the Shangrila Club had complied with the federal liquor laws. On this

record we are convinced that Finney's questions were not tantamount to a custodial interrogation initiated after Kubik had been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. State of Arizona, supra at 444, 86 S.Ct. 1602. Mathis v. United States, supra,

■ Both appellants assert error in the denial of their motion for judgment of acquittal on the conspiracy count. They assert there is no evidence in the record to establish that they conspired to violate the applicable liquor statutes.[2] We disagree.

■ In reviewing the sufficiency of the evidence we consider the evidence in the light most favorable to the verdict. Cave v. United States, 390 F.2d 58 (8th Cir.1968).

Unquestionably, Kubik played the dominant role in the transactions under scrutiny. From their inception, however, White's implication in Kubik's machinations is readily apparent. White was one of the original incorporators of the Carter Lake Fraternal Order of Iowans. He served as an officer of that corporation and filed certain occupational tax returns for it. The inference is clear that he knew the corporation was organized for the operation of a "bottle club" and not for the purposes stated in the articles of incorporation.

In addition, the record is replete with evidence that White actively assisted in the club's operation. He frequently guarded the entrance to the club during Kubik's absence. After Kubik's arrest on the morning of February 6, 1965 agents Daley and Finney reentered the Shangrila Club around 5:30 A.M. and found appellant White working behind the bar. Upon checking behind the bar, agent Daley found two bottles of Hiram Walker Whiskey and thirty-two bottles of Carling's Black Label Beer which had

not been there during the agents' earlier visit. The two liquor bottles did not bear stamps required by the Iowa Liquor Commission. Several agents testified that they frequently observed White inside the premises of the club. From these circumstances the jury could readily infer that he was cognizant of the illegal operation. Other government witnesses testified, moreover, that White purchased wholesale quantities of liquor at regular intervals for club use from dealers who had not paid the wholesale liquor dealer's tax under the federal statutes.

In our view there is substantial evidence in the record to support the conspiracy conviction. Cf. Blumenfield v. United States, 284 F.2d 46, 53–54 (8th Cir.1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961); Isaacs v. United States, 301 F.2d 706, 724–725 (8th Cir.1962), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

■ Appellant White also alleges error in the denial of his motion for a severance. We find no merit in this contention. Rule 8(b), Fed.R.Crim.P. authorizes the joinder of two or more defendants if they are charged in the indictment with participation in the same act or transaction or in the same series of acts or transaction constituting an offense. The conspiracy count provided the necessary link between White's unlawful activities and the substantive offenses with which appellant Kubik was charged. See, e.g., United States v. Bryant, 364 F.2d 598, 603 (4th Cir. 1966). The determination whether a defendant's joinder with his accomplices in crime may be prejudicial is addressed in the first instance to the sound discretion of the district judge. His denial of a severance will not be ground for reversal absent an abuse of discretion. Opper v. United States, 348 U.S. 84, 94–95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Butler v.

2. As stated above, concurrent sentences were imposed on Kubik. Since the convictions on the substantive offenses are concededly supported by substantial evidence, we would refrain from considering the sufficiency of the evidence to support the Count IV conviction but for the fact that this is the only count involving appellant White.

United States, 317 F.2d 249, 264 (8th Cir. 1963), cert. denied, Benedec v. U. S., 375 U.S. 836, 84 S.Ct. 67, 11 L.Ed.2d 65 (1963). Here, we find no such abuse of discretion. The district court, by its rulings and instructions, effectively eliminated any possibility of prejudice to White by reason of his joinder with Kubik.

Appellants were accorded a fair trial. Their convictions are based on substantial evidence and therefore the judgments should be and are affirmed.