Jerry M. COHEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19181.

United States Court of Appeals
Eighth Circuit.

Dec. 18, 1968.

Certiorari Denied April 1, 1969.
See 89 S.Ct. 1274.

John M. Bray, Washington, D. C., for appellant; Robert J. Koster, of Cook, Murphy, Lance & Mayer, St. Louis, Mo., with him on the brief.

John M. Brant, Atty., Dept. of Justice, Washington, D. C., for appellee; Richard C. Pugh, Acting Asst. Atty. Gen., Dept. of Justice, and Lee A. Jackson and Joseph M. Howard, Attys., Dept. of Justice, and Veryl L. Riddle, U. S. Atty., St. Louis, Mo., and Irvin L. Ruzicka, Asst. U. S. Atty., with him on the brief.

Before MATTHES, MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant was indicted in three counts for willful failure to file individual income tax returns for 1960, 1961 and 1962 in violation of § 7203 of the Internal Revenue Code of 1954, and in eight counts for knowingly filing false employer's quarterly tax returns for

1961 and 1962 in violation of § 7201. He was found guilty on all counts and was sentenced.

The question raised here is whether the District Court erred in refusing to exclude evidence obtained from the defendant by Internal Revenue Service Agents—evidence which the defendant contends was secured by misrepresentation and in violation of his constitutional rights under the Fifth (*Miranda*) [1] and Sixth (*Escobedo*) [2] Amendments. We affirm.

A special Agent,[3] assigned to investigate the defendant's failure to file tax returns, telephoned the defendant on August 19, 1963, and told him he was a Special Agent who investigated irregularities in taxes. He asked the defendant a few questions and requested an appointment.

On September 9, 1963, the Special Agent went to the defendant's office and told him that the St. Louis Office of the Internal Revenue Service had no record of income tax returns filed by the defendant and asked where they had been filed. The defendant replied that he had filed returns in Detroit in 1959, but had not filed returns after that. This was the first time that the Special Agent knew that no returns had been filed. The Special Agent then told the defendant that a Revenue Agent had been assigned to "examine his income tax liability, if any" and that the Revenue Agent would make the tax examination, and that he, the Special Agent, would

conduct an audit. The Special Agent also learned, at this meeting, that the defendant was the sole proprietor of the United Heating Service.

The agents visited the defendant's office singly or together on September 26, 1963, June 3, 1964, September 9, 1964, March 16, 1965, August 10, 1965 and September 16, 1965. On most occasions, they obtained records used against the defendant.

It was at the second visit, on June 3, 1964, that the defendant was first advised that he need not answer any questions which tended to incriminate him. He responded to this warning by saying that he understood but saw no reason not to answer. The warning was repeated at an August 10, 1965, meeting at the defendant's office. The defendant again answered the questions put to him by the agents.

On April 6, 1966, the taxpayer went to the Internal Revenue Service office for a formal interview. He did so in response to a letter which told him he could bring an attorney. He was advised for the first time at this meeting that the Special Agent was a criminal investigator. He was also advised for the first time that he had a right to counsel, but was not told that counsel would be provided for him.

■ On the basis of this record, we are convinced that the defendant's records and statements were not obtained by misrepresentation, fraud, or

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

2. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

3. Revenue Agents undertake routine civil audits in an attempt to ascertain if, in fact, there has been a deficiency. The Revenue Agent, in the normal course, is not searching for evidence of fraud. If, however, the Revenue Agent discovers the possible existence of fraud, the matter is turned over to his superiors who refer the case to the Intelligence Division. The Intelligence Division then determines whether a fraud investigation

is warranted. If a decision is made to commence a fraud investigation, a Special Agent is placed in charge. The Special Agent is a trained criminal investigator. His duty is to determine whether the taxpayer has, in fact, committed fraud. Both the Special Agent and Revenue Agent have virtually unreviewable discretion to dismiss the criminal aspects of a case while they are in charge. Duke, Prosecutions For Attempts To Evade Income Tax: A Discordant View of a Procedural Hybrid, 76 Yale L.J. 1, 34–35 (1966); Hewitt, The Constitutional Rights of the Taxpayer in a Fraud Investigation, 44 Taxes 660, 661–62 (1966).

coercion, as those terms were understood pre-*Escobedo* and *Miranda,* and were voluntarily given in the same sense.

■ While there is District Court authority for the view that Internal Revenue Service Agents have an affirmative duty to inform a taxpayer that he is the subject of a criminal investigation in circumstances comparable to those here,[4] the United States Courts of Appeals have uniformly held to the contrary.[5] We follow the latter cases but reiterate our warning in White v. United States, 395 F.2d 170 (8th Cir. 1968), that agents must not affirmatively mislead a taxpayer into believing that the investigation is exclusively civil in character and will not lead to criminal charges.

We turn to the question of whether the failure to give a *Miranda* warning, or a modified version thereof, made the evidence obtained inadmissible.

We indicated by way of dictum in Frohmann v. United States, 380 F.2d 832 (8th Cir. 1967), and held in *White,* that a special investigator for the Alcohol and Tobacco Tax Division of the Internal Revenue Service conducting a pre-custody investigation need not warn a taxpayer of his constitutional rights as enunciated in *Escobedo* and *Miranda.* We did not distinguish in either case between investigations conducted by the Audit Division, usually civil, and those conducted by Special or Intelligence Agents, usually criminal. Nor did we attempt to draw a line between the investigatory or accusatory stage of such investigations.

We are now faced with the question of whether we will apply the dictum in *Frohmann* and the holding in *White* to pre-custodial inquiries by Special Agents of the Internal Revenue Service, including situations in which the inquiries may have reached the accusatory stage.

District Courts in the Tenth, Fifth, Third and Seventh Circuits have held that warnings are required at the point the investigation reaches the accusatory stage or becomes criminally oriented. They have indicated that this stage is often reached when a Special Agent is assigned to the case.[6] United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill. 1967), is recognized as the leading case for this point of view.

In *Turzynski,* as a result of a civil investigation, the taxpayer's case was turned over to the criminal division of the Internal Revenue Service. The taxpayer was not informed of this shift of focus and continued to furnish the Special Agent with records and interviews.

---

4. United States v. Wheeler, 149 F.Supp. 445, 450 (W.D.Pa.1957), rev'd on other grounds, 256 F.2d 745 (3d Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958):

"* * * [T]he law distinguishes between failure on the part of a government investigator to disclose the purpose of his investigation at its inception when suspicion of criminal wrongdoing exists and the discovery of criminal wrongdoing in the course of a routine investigation. * * * *"

The former constitutes misrepresentation. United States v. Wolrich, 129 F.Supp. 528 (S.D.N.Y.1954). Although fraud was suspected from the outset the agents told the defendant that it was a routine examination. The court held that this was a misrepresentation. United States v. Guerrina, 112 F.Supp. 126 (E.D.Pa.1953), modified, 126 F.Supp. 609 (E.D.Pa.1955).

5. United States v. Mackiewicz, 401 F.2d 219 (2d Cir. July 10, 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (U.S. Oct. 28, 1968); United States v. Sclafani, 265 F.2d 408, 414 (2d Cir. 1959), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1960); United States v. Frank, 245 F.2d 284, 286 (3d Cir. 1957), cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957). See Hanson v. United States, 186 F.2d 61, 65–66 (8th Cir. 1950).

6. United States v. Wainwright, 284 F. Supp. 129 (D.Colo.1968); United States v. Kingry, 67–1 USTC ¶9262 (N.D.Fla. January 6, 1967); United States v. Gower, 65–2 USTC ¶9752 (M.D.Pa. August 27, 1965). See, Andrews, The Right To Counsel In Criminal Tax Investigations Under Escobedo And Miranda: The "Critical Stage," 53 Iowa L.Rev. 1074, 1111–1116 (1968); Comment, 53 Iowa L. Rev. 957, 962 (1968).

The taxpayer was given no warning of possible criminal prosecution until the investigation was completed and he was sent a letter inviting him to a formal conference. The letter informed him that he could bring counsel. The taxpayer reported without counsel. The agents, however, refused to continue until the taxpayer retained counsel. The court said:

" * * * Once a taxpayer becomes the subject of a criminal tax investigation, as evidenced by the referral of the investigation to the Intelligence Division or otherwise, our adversary process of criminal justice has become directed against him as a potential criminal defendant. Any evidence obtained from him is admissible only if the taxpayer furnished it after knowingly and voluntarily waiving his constitutional rights and privileges. * * *

* * * * * *

"To hold otherwise would lead to the anomalous conclusion that a person suspected of bank robbery, sale of narcotics, murder, rape or other serious crime is entitled to greater protection of his constitutional rights than a person suspected of violating the internal revenue laws. For when the silent transition from civil to criminal investigation takes place in a tax case, the taxpayer being interrogated and asked to furnish his books and records is just as surely a prime suspect and candidate for criminal prosecution as the individual under interrogation as a suspect for other crimes."

Id. at 850–851.

The Courts of Appeals, that have considered the matter since *Escobedo,* have held, in a variety of fact situations, that warnings need not be given in pre-custodial interview.[7] The reasoning of

---

7. *FIRST CIRCUIT:*
Taglianetti v. United States, 398 F.2d 558 (1st Cir. July 18, 1968), petition for cert. filed, 37 U.S.L.Week. 3081 —— (U.S. Aug. 28, 1968) (No. 446) ; Spinney v. United States, 385 F.2d 908 (1st Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968) ; Schlinsky v. United States, 379 F.2d 735 (1st Cir.), cert. denied, 389 U. S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967); Morgan v. United States, 377 F.2d 507 (1st Cir. 1967).

In each of these cases, the defendant was warned of his right to remain silent and was told that anything he stated could be used against him. In none of them was he advised of his right to counsel or to have counsel appointed for him. The language of the Court in *Spinney* indicates, however, that it would not necessarily require that any of the *Miranda* warnings be given to a taxpayer being interviewed in home or an Internal Revenue Service office.

" * * * [W]here one is legally free, albeit at the risk of unpleasant consequences, to reject the government's invitation to appear and participate in an I.R.S. interview, the requirements enumerated in *Miranda* do not apply. * * *

" '. . . the background of *Miranda* demonstrates that it was the product of the Court's concern with the difficulty

of protecting persons in the custody of the police from coercive interrogation tactics carried on in secret. * * * Defendant makes no assertion, nor could he, that he was not free to walk out of the Internal Revenue office at any time. * * * ' "

Spinney v. United States, 385 F.2d at 910.
*SECOND CIRCUIT:*
United States v. Marcus, 401 F.2d 563 (2d Cir. September 20, 1968); United States v. Dawson, 400 F.2d 194 (2d Cir. 1968); United States v. Squeri, 398 F.2d 785 (2d Cir. 1968); United States v. Mackiewicz, 401 F.2d 219 (2d Cir. July 10, 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (U.S. Oct. 28, 1968).

In *Mackiewicz* and *Squeri*, the defendant was warned of his right to remain silent but was not advised of his right to counsel. In *Dawson* the defendant was warned of his right to remain silent and to have counsel at the first two interviews. At subsequent interviews, no warnings were given and defendant made damaging admissions. In *Marcus*, it is not clear whether or not the defendant was warned of his right to remain silent, but the defendant was not warned of his right to counsel. The Court, in all four cases, went beyond the facts of the particular case and stated that where the defendant was aware he was the subject

Judge Lumbard in United States v. Squeri, 398 F.2d 785 (2d Cir. 1968), appears to reflect the views (often unexpressed) of the Circuits that have considered the question:

of a tax investigation and where the interviews were conducted in noncustodial situations, *Miranda* warnings are not required.

*FOURTH CIRCUIT:*

United States v. Mancuso, 378 F.2d 612 (4th Cir.), modified, 387 F.2d 376 (4th Cir. 1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968).

The defendant was accompanied by his attorney and accountant at two Internal Revenue Service interviews where he made incriminating statements. The defendant was warned he could refuse to answer the questions which could incriminate him, but was not warned of his right to counsel. The Court, rather than base its decision on the narrow ground that counsel was, in fact, present, chose to hold that neither *Miranda* nor *Escobedo* are applicable to a tax investigation where the purpose is to determine whether or not an additional tax is due or a crime has in fact been committed.

*FIFTH CIRCUIT:*

Mathis v. United States, 376 F.2d 595 (5th Cir. 1967), rev'd, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

The defendant was interviewed in connection with a routine audit while he was confined in the Florida State Penitentiary on an unrelated conviction. No warnings were given and the Circuit Court affirmed on the basis that no warnings were required where the agent was conducting a routine audit even though there was a possibility that fraud would be uncovered. The Supreme Court reversed and held the interview must be suppressed as it was the product of an *in custody* interrogation.

*SIXTH CIRCUIT:*

United States v. Maius, 378 F.2d 716 (6th Cir.), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967).

The defendant was warned that he had the right to remain silent but not that he had the right to counsel. The Court expressed grave reservations as to its holding:

"* * * A citizen summoned before such federal agents has the option to refuse to answer their questions; but there are few who have the toughness of fibre and the technical knowledge of

"* * * [W]e reject the view, adopted by a few district courts in other circuits, that IRS agents must give the *Miranda* warnings, even though there is no custodial interroga-

their rights, who would decline to answer questions put to them in these circumstances. Until we are told by superior authority that a citizen's constitutional rights are imperiled by such procedure, we are constrained to hold that the evidence thereby obtained is admissible in the ensuing criminal trial."

Id., at 719.

*SEVENTH CIRCUIT:*

United States v. Mansfield, 381 F.2d 961 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 593, 19 L.Ed.2d 661 (1967).

The defendant was warned at the initial interview that there was a possibility of criminal prosecution and that he could remain silent and refuse to produce his records. He was not warned of his right to counsel. No further warnings were given at subsequent interviews. The Court held that the tactical decision not to give further warnings did not render inadmissible records obtained at subsequent interviews.

*NINTH CIRCUIT:*

Selinger v. Bigler, 377 F.2d 542 (9th Cir.) (Per Curiam), cert. denied, 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218 (1967); Rickey v. United States, 360 F.2d 32 (9th Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 69 (1966); Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966).

All three of these cases arose post-*Escobedo* but pre-*Miranda*. In *Kohatsu*, the defendant was not warned of his right to retain or have counsel appointed, but was warned of his right to remain silent and not to produce any records. The warning, however, was given by a Special Agent after the defendant had already made incriminating statements and turned over incriminating records to a Revenue Agent. The Court held that *Escobedo* was not applicable as this was an investigation to determine whether a crime had been committed in fact. Revenue Agents are not required to inform the taxpayer of the shift to a criminal investigation where a routine investigation develops evidence of fraud because it is inherent in the investigation that the agents will pursue such evidence. The other two cases relied on this reasoning.

tion, if the investigation has reached the accusatory stage. * * * The Fifth Amendment privilege prohibits the government from *compelling* a person to incriminate himself. It was the compulsive aspect of custodial interrogation, and not the strength or extent of the government's suspicions at the time the questioning was conducted, which led the court to impose the *Miranda* requirements with regard to custodial questioning. We believe that the presence or absence of compelling pressures, rather than the stage to which the government's investigation has developed, determines whether the *Miranda* requirements apply to any particular instance of questioning."

Id. at 790.

On November 26, 1968, the Internal Revenue Service announced a revised procedure for advising a taxpayer of his rights during an investigation conducted by a Special Agent of the Internal Revenue Service, Intelligence Division.

" * * * At the initial meeting with a taxpayer, a Special Agent is now required to identify himself, describe his function, and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding.

"Previously, the Special Agent identified himself and described his function at the first meeting with the taxpayer but was not required to give further advice unless the taxpayer was in custody or the investigation proceeded beyond the preliminary stage.

"IRS has made no change in its existing instructions that if it becomes necessary to interview a person who is in custody, an Agent must give a comprehensive statement of rights before any interrogation. This statement warns the person in custody that he may remain silent and that anything he says may be used against him. "A person in custody also must be told that he has the right to consult or have present his own counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed by the U. S. Commissioner."

IRS News Release IR–949, November 26, 1968.

The procedures outlined in the instructions are a step forward in tax administration and will be among the factors considered by this Court in determining whether the nature of an investigation has been misrepresented. They fall short, however, of extending to the taxpayer the protections set forth in *Escobedo* and *Miranda*.

■ The administration of the new Internal Revenue Service procedure will raise practical problems. In some instances, the Revenue Agents will have obtained the evidence necessary to obtain a conviction before referral; in others, Revenue Agents might be encouraged to expand their inquiries. Furthermore, a determination as to when the right to warnings attach should not depend on the title and function of the official investigator. United States v. Mathis, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); United States v. Mackiewicz, 401 F.2d 219 (2d Cir. July 10, 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (U.S. Oct. 28, 1968); Note, 33 U.Chi.L.Rev. 134, 147–48 (1965).

To meet these problems, Law Review commentary recommends that warnings be optional with the Internal Revenue Service depending on whether there is a desire to preserve the right to use any evidence obtained in a criminal prosecution. If it had this desire, full warnings would be required.[8]

---

8. Duke, supra note 3, at 39; Hewitt, supra note 3, at 697; Lipton, Constitutional Rights in Criminal Tax Investigation, 53 A.B.A.J. 517, 521 (1967); Note, 33 U.Chi.L.Rev. 134, 147–48 (1965).

If a taxpayer is entitled to be warned of his Fifth and Sixth Amendment rights in a non-custodial tax investigation, the Law Review recommendations would be meritorious. While the suggested procedure would impose additional administrative tasks,[9] it would be fair to the taxpayer and susceptible of review. We do not require it, however, because we do not believe that the taxpayer is so entitled.

 To summarize, we hold that the Internal Revenue Service Agents, Revenue or Special, are not required to warn taxpayers who are not in custody of their Fifth or Sixth Amendment rights.

We also reemphasize the views that we expressed in *White* that disclosures to Internal Revenue Service Agents, Revenue or Special, must be entirely voluntary and must not be induced by coercion, fraud or misrepresentations.

Affirmed.

---

9. "To inject the full *Miranda* warning at this stage of the proceedings would merely clutter an already difficult administra-

tive task." United States v. Mackiewicz, supra. See, Kohatsu v. United States, supra; United States v. Sclafani, supra.