UNITED STATES of America,
Appellee,

v.

Elton M. BREVIK, Appellant.

No. 19726.

United States Court of Appeals,
Eighth Circuit.

March 11, 1970.

Certiorari Denied June 1, 1970.

See 90 S.Ct. 1861.

Richard A. Rohleder, St. Paul, Minn., for appellant.

Ralph E. Koenig, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

Elton M. Brevik was tried in November, 1968 on two counts of income tax evasion, one each for 1961 and 1962, before Judge Phillip Neville in the United States District Court for Minnesota. The jury returned verdicts of guilty on both counts and Brevik was sentenced to three years imprisonment. Motions for judgment n. o. v. and in the alternative for new trial were denied and the defendant appealed. Since Brevik does not challenge the sufficiency of the evidence upon which he was convicted and since proof of his guilt was in fact substantial we need only discuss those facts germane to the two questions of law upon which this appeal is based.

Brevik contends first that his statements to a special agent of the Internal Revenue Service were obtained in violation of the guidelines laid down by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966), and should not have been received in evidence, and second that testimony of several other government witnesses and exhibits related thereto were irrelevant and prejudicial and improperly admitted into evidence.

The first contention arises out of testimony given at trial by Govern-

ment witness and IRS agent Samuel P. Doonan. Agent Doonan testified to statements made by the defendant at an interview which occurred on August 9, 1965 in the Minneapolis office of the IRS. Present at the interview were Special Agent Doonan, Revenue Agent Earl Williams, and the defendant. Agent Doonan had previously requested a meeting with Brevik and requested that Brevik bring his personal business records. It is undisputed that Brevik's compliance with these requests was voluntary. At the meeting itself Brevik's freedom of movement, including the right to leave, was not restricted. Agent Doonan testified that he informed Brevik before proceeding with the interview that Brevik had a right under the Fifth Amendment not to furnish any information to him or to talk to him. However, Agent Doonan did not advise Brevik of his right to counsel. Before Agent Doonan testified to the substantive events at the August 9th interview Brevik's counsel objected to further testimony regarding the interview on the ground that under the *Miranda* decision Brevik was entitled to be informed of his right to counsel and any statements made without such advice being given are not admissible in evidence. This objection was overruled.

Agent Doonan testified to only two statements made by Brevik at the interview. The first was that Brevik told him that in compliance with the request to bring in his records, he (Brevik) had placed them in the glove compartment of his automobile from which they were stolen while his car was parked at the airport where he had left it while temporarily out of town. Agent Doonan testified also that Brevik attempted to explain the payment of a check in the amount of $2500.00 to his brother-in-law, James P. Korstad, drawn on the corporate account of Selective Investment Corporation, as being in exchange for financial advice regarding the corporate structure of the company. Korstad had previously testified that the pay-

ment was reimbursement of a long standing personal debt.

In light of the totality of the evidence proving defendant's purposeful tax evasion, these statements testified to by Agent Doonan taken together amount to only an insignificant part of the evidence upon which the defendant was convicted and were used largely to question Brevik's credibility rather than as substantive proof of his guilt. Furthermore, the Court's ruling admitting this evidence was correct. We held in Cohen v. United States, 405 F.2d 34 (8th Cir. 1968), cert. denied, 394 U.S. 943, 89 S. Ct. 1274, 22 L.Ed.2d 478 (1969), that where an interview is of a non-custodial nature, as was concededly the case here, statements elicited or volunteered at such an interview are not tainted or inadmissible due to failure to give all of the *Miranda* warnings, even where such interview has reached the accusatory stage. *Cohen, supra,* like the case before us, was a case involving a non-custodial interview by IRS agents. Virtually all the circuits have ruled on the issue of the application of the *Miranda* warnings to non-custodial tax investigations and only the 7th Circuit in United States v. Dickerson, 413 F.2d 1111 (1969) opposes the rule that *Miranda* does not apply to such situations. The case of Mathis v. United States, 391 U. S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), cited by defendant, is not applicable since it involved a clearly custodial situation. In light of *Cohen* and the many cases in the other circuits supporting the proposition in *Cohen,* we hold that it was not error to admit the testimony of Agent Doonan.

■ Defendant next objects to the admission of certain testimony given by four Government witnesses, Frank Kosanda, Raymond F. Kelly, Joe Thompson and Vernie Lysenzer. The crux of the claim is that certain segments of the testimony of these witnesses and connected exhibits prejudicially accused the defendant of prior criminal misconduct in violation of the general rule observed

in Hartman v. United States, 215 F.2d 386 (8th Cir. 1954) and Kempe v. United States, 151 F.2d 680 (8th Cir. 1945), cert. denied, 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1864 (1947),[1] and as a result such evidence was improperly admitted.

Frank Kosanda testified that as an attorney in Grand Forks, North Dakota he had incorporated the Garden State Investment Company. This testimony is connected with the rest of the case only in the fact that Garden State Investment Company was one of the companies from which money was apparently taken by Brevik without reporting it as income. This testimony may be irrelevant but it is not prejudicial, does not violate the rule against admission of evidence tending to show that a defendant has committed other crimes, and in light of all the evidence, its admission, if error, was surely harmless.

Witnesses Kelly and Thompson testified over objection that they were North Dakota farmers who were solicited by Brevik and who bought stock in Garden State Investment Company. Lysenzer only testified that Brevik visited him, at which point, after objection from defense counsel, the trial court prohibited further evidence of this sort, saying that it was cumulative and that if it were continued it might become prejudicial in that it implied that Brevik was involved in dishonest stock transactions, a crime which was not part of the indictment in the present case. The trial court observed that the evidence admitted to that point was not prejudicial.

On the whole we agree with the trial court that very little of this testimony was important and none was significantly prejudicial considered in light of the totality of the evidence. There might be some question regarding the Government's purpose in introducing this testimony and some difficulty in determining its relevance. However, the Government does suggest one plausible explanation. The Government contends that it was necessary to show that monies taken from corporate accounts were in fact corporate funds and not personal finances. Thus, the evidence is probably relevant, and even if irrelevant and erroneously admitted, is harmless error in light of the overwhelming evidence of defendant's guilt. As to the allegation that the testimony, even if relevant, violates the general rule against admission of evidence which tends to implicate a defendant in other criminal activity, it is difficult to see how this testimony does so. At most it appears to raise a bare implication of possible dishonest stock transactions, and in fact no testimony was received other than the statements that stock was sold for significant sums of money. Only in one instance was possible dishonest activity more clearly raised. Joe Thompson testified that the original check used to purchase stock from Brevik was in the courthouse in Grafton, North Dakota as part of the evidence in a lawsuit there. Defense counsel objected to this testimony and the objection was sustained, the testimony stricken from the record, and the jury instructed to disregard it. Much more damaging evidence implicating Brevik in violations of the Minnesota Securities Act was elicited by Brevik's own counsel in cross-examining a Gov-

---

1. In Hartman v. United States, *supra* at 393, the Court held that "In order for wrongful acts not included in a charge to be admissible to prove intent they must be of such a character that as a matter of logic they tend to demonstrate a criminal intent in the acts within the charge." Kempe v. United States, *supra* at 687, states the rule as: "The general rule is that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. The accused is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the information. It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the information."

ernment witness who testified under cross-examination that Brevik had pleaded guilty to such violations.

We find that most of the evidence complained of had relevance sufficient for admission and none was significantly prejudicial. Thus, it is our view that no error was committed, but even assuming, *arguendo*, that some error was committed, it was harmless.

Judgment affirmed.