UNITED STATES of America and Charles A. Smith, Special Agent of the Internal Revenue Service, Petitioners,

v.

Gay RAABE, V. P. Operations Department, First National Bank of the Black Hills, Rapid City, S. D., Kenneth D. Barney and Madeline L. Barney, Respondents.

United States District Court,
D. South Dakota.

May 17, 1977.

David V. Vrooman, U. S. Atty., Sioux Falls, S. D., for petitioners.

Thomas H. Foye, Rapid City, S. D., for respondents.

Kenneth D. and Madeline L. Barney, pro se.

## MEMORANDUM OPINION

BOGUE, District Judge.

These two cases are proceedings to enforce IRS summonses which were served upon Gay Raabe January 13, 1977. The summonses sought testimony and records relating to the tax liability of Kenneth D. Barney and Madeline L. Barney, respective-

ly. Specifically, the summonses required Gay Raabe (Vice-President of the Operations Department, First National Bank of the Black Hills, Rapid City, S. D.) to appear at 1:00 p. m. on January 25, 1977, at the First National Bank and, with respect to each of Kenneth D. and Madeline L. Barney, produce the following records: `

1. Signature card(s) for all account(s) and safety deposit box(es), i. e. business, individual, joint;

2. Checking account(s), statements, deposit slips, deposit items if deposit items are not identified, cancelled checks and other debits;

3. Savings account(s) ledgers, deposit slips, withdrawal slips, deposit items if deposit items are not identified;

4. Safety deposit box entry records;

5. Commercial loan liability ledgers and installment loan ledgers, together with financing statements, loan applications and related documents and correspondence;

6. Records of bank checks, money orders, cashiers checks, travelers checks, and certificates of deposit, purchased by or on behalf of the above.

Respondent Gay Raabe failed to comply with the administrative summonses, and these two actions were commenced by filing Petitions seeking enforcement. On March 25, 1977, this Court entered an Order to Show Cause requiring Gay Raabe to appear April 5, 1977 at 9:00 a. m. and show cause why he should not be compelled to comply with the summonses. Respondent Gay Raabe has taken no position with respect to the propriety of enforcement of the summonses.

On April 4, 1977, the Barneys filed a Motion to Intervene. Although the notice and intervention provisions of the Tax Re-

form Act of 1976 [1] are not applicable to this case, this Court granted the Barneys' Motion to Intervene in order to avoid multiple litigation.[2]

At the hearing held April 5, 1977, IRS Special Agent Charles A. Smith testified that the Barneys had filed what the IRS calls a "protest return" for the tax year in question. Since a "protest return" gives no indication of what an individual's taxable income might be, Special Agent Smith testified that the items sought in the summonses were necessary to determine whether (and, if so, to what extent) the Barneys have any income tax liability. The IRS does not now have these items. Agent Smith had orally requested income records which the Barneys may have had prior to issuing the summonses, and the Barneys had declined to provide such records. The summonses had been personally served upon Gay Raabe. The summonses described the items sought with reasonable certainty.

Enforcement of an IRS summons such as those in question requires a showing that:

1. The contemplated investigation will be conducted pursuant to a legitimate purpose under 26 USC § 7602, the term "legitimate purpose" includes:
   A. Ascertaining the correctness of any return
   B. Making a return where none has been made
   C. Determining the liability of any person for any internal revenue tax
   D. Collecting any liability for any internal revenue tax;

2. The inquiry sought by the summons *may* be relevant to a legitimate purpose. Probable cause to suspect fraud or criminal activity need not be shown;

---

1. 26 U.S.C. § 7609(a)(3) provides for notice of a third party summons to be given to the taxpayer involved within three days after service of the summons upon the third party recordkeeper. However, these provisions are applicable only to summonses issued after February 28, 1977. P.L. 94–528 (Oct. 17, 1976). The summonses in the instant case were issued January 13, 1977.

2. On November 11, 1976 Kenneth D. Barney filed an action (CIV76–5077) seeking injunctive relief against two banks who had been served with, and allegedly intended to comply with, summonses similar to those involved in this case.

3. The information sought is not already within the Commissioner's possession; and

4. The administrative steps required by the Code have been followed. These steps include personal service of the summons upon the recordkeeper, and require an adequate description in the summons.

*United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Donaldson v. United States*, 400 U.S. 517, 526–527, 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971).

This Court has considered the testimony received April 5, 1977 in light of the applicable law, and hereby finds and determines that the IRS has made a *prima facie* showing of the existence of facts necessary to support an Order enforcing the summonses. The next question, then, is whether any facts were disclosed which either rebut that *prima facie* showing or show abuse of the process. As noted above, Respondent Gay Raabe has taken no position with respect to whether the summonses ought to be judicially enforced. The Barneys' bases for resisting enforcement can be found in their Motion to Restrain or in the Alternative to Dismiss IRS Petition to Enforce IRS Summons, and supporting memoranda and affidavits.

■ Although the tenor of the Barneys' Motion to Restrain, etc. is at times somewhat unclear, the Motion appears to be based in substance upon the following contentions, which will be discussed as they are listed.

1. The relationship between the Barneys and the First National Bank is confidential in nature, and enforcement of the summonses would violate that confidential relationship, and could impair the Barneys' ability to earn a living since compliance with the summonses would allegedly disclose the names and addresses of the Barneys' clients and customers.

This appears to be a claim that the material sought is privileged. There is, however, no recognized privilege which attaches to the dealings between a depositor and a bank that precludes disclosure of records of their ordinary dealings by lawful process. *Compare Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1971).

■ 2. Compliance with the summonses would violate the Barneys' freedom of religion.

This claim is apparently premised on the notion that the Constitution emanates from God, and that interpretation of the Constitution in a manner contrary to the Barneys' interpretation violates their first amendment rights. The Barneys interpret the Constitution to contain an unexpressed right to privacy of such a nature that it would be violated by production of the *Bank's* records of the transactions between the Barneys and the Bank. The Courts have not arrived at such an interpretation, however, and this Court thus rejects the Barneys' argument.

3. The IRS intends to use the records sought to build a criminal case against the Barneys.

In their affidavit at paragraphs 25 and 26, the Barneys make the following statement in support of this claim:

The Respondents did apply for information in their file to Mr. John B. Langer, District Director, Aberdeen, S. D., under the Freedom of Information Act, 5 USC 552, January 24, 1977 and a reply of denial of information was received by us on February 9, 1977, "Exempt from disclosure provisions of Freedom of Information Act 5 USC § 552 in accordance with subsections (b)(3) [exemption from disclosure for matters specifically exempted by statute], (b)(7)(A) [exemption from disclosure for records compiled for law enforcement purposes to the extent that disclosure would interfere with enforcement proceedings], and (b)(7)(E) [exemption *from disclosure for records compiled for law enforcement purposes to the extent that disclosure would disclosure*

investigative techniques and procedures]. Person to contact, Mr. Dennis Goebel."

■ It should be noted that the Barneys do not attempt to seek review of the denial of their request for disclosure, but are attempting only to use the denial as evidence that the IRS intends to initiate criminal proceedings. In this context, it is significant that none of the exemptions to the Freedom of Information Act relied upon by the IRS expressly refer to possible *criminal* proceedings, as opposed to investigations to determine the existence of any tax liability. However, the Barneys' affidavit then goes on to state:

That on February 16, 1977 at about 3:45 p. m., Mr. Goebel contacted us by telephone for an explanation of the denial, and subsections cited, and was told by Mr. Goebel that "you are under criminal investigation, to give information requested would disclose investigative techniques."

At this point it should be noted, as do the Barneys in paragraph 32 of their affidavit, that the IRS employee involved in this investigation has the status of "IRS Special Agent." According to some Courts, an IRS investigation becomes "criminally oriented" when a Special Agent is assigned to it. *See Cohen v. United States*, 405 F.2d 34 at 36 (8th Cir. 1968); *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 at 9 (1976), Marshall, J., concurring.

Thus it may be inferred from the facts outlined above from the Barneys' affidavit that the investigation of their case may have become "criminally oriented." However, the test for whether such facts should preclude the use of a summons as opposed to a warrant is apparently more stringent. The Supreme Court stated in the case of *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971):

. . . the special agent may well conduct his investigation jointly with an agent from the Audit Division; that their combined efforts are directed to both civil and criminal infractions; and that any decision to recommend prosecution comes only after the investigation is complete or is sufficiently far along to support appropriate conclusions. The fact that a full-scale fraud investigation is being made does not necessarily mean that prosecution ensues when tax liability becomes apparent.

\* \* \* \* \* \*

There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. . . . We refuse to draw that line and thus to stultify enforcement of federal law.

\* \* \* \* \* \*

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and *prior to a recommendation for criminal prosecution.* (Emphasis added and citation omitted) 400 U.S. 517 at 535–536, 91 S.Ct. 534 at 544–545 (1971).

Thus, under the *Donaldson* case, the facts in the Barneys' affidavit fall short of establishing a bar to enforcement of the summons herein, and this Court finds that there has not yet been a recommendation by Special Agent Smith to begin a criminal prosecution, and that he has not at this point formulated an intention to make such a recommendation. The most that can be said at this point is that there may be reason to suspect that the Barneys may be subject to possible criminal prosecution at some time in the future. Since the IRS does not now know whether or not the Barneys have failed to report any taxable income, it cannot be said that the summonses involved in this case are issued in aid of a criminal investigation. There has been no recommendation for a criminal prosecution, and thus there is no investigation in aid of one at this point.

In this connection, this Court wishes to note that it has conducted an *in camera* inspection of Forms 3949 (Revised 1–75) relative to the Barneys, and found nothing in those forms to contradict the testimony

of Special Agent Smith and the findings of this Court.

    4. The next claim urged by the Barneys is based on their allegations that the IRS is acting in bad faith in an effort to silence the Barneys, who claim to be "outspoken protestors" of what they consider improper government activity.

■ Under the holding of *Donaldson, supra,* an IRS summons must be issued in good faith. Thus the Barneys' allegations on this issue do present an issue of fact for this Court to resolve. In support of their bad faith allegations, the Barneys rely on: their belief that the IRS is attempting to silence them, and an alleged IRS effort (references are made to an IRS manual) to quell tax protests, along with what they have heard about other cases. After considering all of the evidence, particularly the testimony of Special Agent Smith, this Court finds that in this case the IRS is acting in a good faith effort to ascertain whether the Barneys have a tax liability.

    5. The Barneys also assert a violation of their fourth and fifth amendment rights.

■ As to this claim, a long line of case law establishes that an IRS summons directed to a third-party bank seeking bank records regarding a person does not violate that person's fourth amendment rights. *First National Bank of Mobile, Ala. v. United States,* 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925); *see also United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). The same is true of the fifth amendment. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The records being sought are those of the third party, and not those of the taxpayer. Thus the taxpayer is simply not being "compelled in any criminal case to be a witness against himself," and he does remain secure from unreasonable search and seizure of *his* "person, house, papers, and effects." The Barneys argue that the banking system is, as a practical matter, mandatory, and thus that

revealing the bank's records does subject them to coercion. This Court rejects this argument because, quite simply, the premise that the banking system is mandatory is not true.

    6. The Barneys' next claim of any discernable substance is that they are being taxed unequally.

■ This claim is supported only by general allegations, and there is no specific showing that others situated similarly to the Barneys are being taxed differently from them. Thus this claim will be rejected, assuming arguendo that it would be a bar to enforcement of an IRS summons.

    7. Finally, the Barneys state that they have no tax liability, and that therefore the summons could have no legitimate investigative purpose.

■ The IRS need not establish an actual tax liability at this stage. It must establish only that there is a legitimate purpose for its summonses. Under the applicable statute (26 U.S.C. § 7602) the term "legitimate purpose" is broad enough to include "ascertaining the correctness of any return" and "making a return where one has not been made." Both of these reasons are applicable to this case, and the investigation in question is therefore in furtherance of a legitimate purpose.

Each of the Barneys' claims having been rejected, this Court will enter its Order directing compliance with the summonses in question. The foregoing shall constitute this Court's findings of fact and conclusions of law.