**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Andrew B. DOTT et al., Defendants.**

**No. 69 Civ. 551.**

United States District Court
S. D. New York.
May 14, 1969.

Arthur F. Mathews, Burton H. Finkelstein, Richard S. Kraut and Howard S. Jacobs, Washington, D. C., for plaintiff SEC.

Irving Fliegler, New York City, for defendant George J. Wunsch.

## MEMORANDUM

TYLER, District Judge.

In this civil action, the Securities and Exchange Commission ("Commission") seeks a permanent injunction, alleging, *inter alia*, that defendant George J. Wunsch ("Wunsch"), a registered representative has engaged in trading for his own account[1] in violation of the securities laws of the United States.[2] Wunsch does not deny the charges in the complaint but defends on the grounds that he (1) had ceased trading for his account prior to the time of the institution of the Commission's investigation and (2) had provided information which led to this suit to investigators of the Internal Revenue Service during a Treasury Department inquiry without having previously been advised of his constitutional rights.[3]

On these two grounds, Wunsch now moves for summary judgment dismiss-

---

[1]. More specifically, the Commission has alleged that Wunsch, in concert with certain other defendants, caused purchases and sales of government securities to be made through secret accounts at Marine Midland Grace Trust Company, Rutberg & Company, and R. F. Peterson & Company, from and to certain banks, brokers and dealers "in a predetermined and prearranged manner for the purpose of assuring trading profits in such secret accounts". The Commission alleges that these transactions were executed in a manner designed to conceal the identities of the actual persons having the beneficial interest in these purchases and sales by causing them to be designated on the books and records of the participating banks, brokers and dealers as trades ef-

fected in the normal course of business. Certain other transactions by Wunsch are alleged by the Commission, but are not pertinent to present consideration of the case.

[2]. Section 17(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77q(a) and Sections 10(b) and 17(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78q(a) and Rules 17 C.F.R. 240.10b–5 and 240.17a–3.

[3]. Evidently, defendant argues that this second ground will support a motion for summary judgment because, absent the evidence provided both directly and indirectly by the contested interview, the Commission's case collapses.

ing the complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In April, 1962, Wunsch was hired by Blyth & Company, Inc., and served as an employee in its government securities department until April, 1968, when he was fired. In January, 1967, he had become a Vice President of Blyth and the head of its government bond department, a position which Wunsch held until his association with Blyth was terminated. At some point[4] during his tenure at Blyth, Wunsch entered into the allegedly unlawful course of dealing set out above (see footnote 1), terminating that conduct, for reasons which are presently unclear,[5] in May, 1967.

In October, 1967, Wunsch and John G. Beutel, another defendant, were interviewed by two agents of the Treasury Department. These interviews were part of a Treasury investigation of a suspected leak to dealers in government securities of inside information respecting forthcoming governmental financings. Prior to Wunsch's interview with the agents, he was instructed by Mr. Paul Devlin, Chairman of the Board of Blyth & Company, to cooperate fully with the Treasury agents and to answer all questions. At the interview of Wunsch, he was informed by the agents that the information would remain confidential, and would not be used to jeopardize his employment position.[6] Wunsch was given none of the Miranda warnings at that interview and answered questions concerning whether or not he had been trading for his own account in government securities. His affirma-tive answers were communicated by the Treasury Department to the Commission, which used such information in preparing and commencing this suit.

Consideration of the grounds urged by Wunsch in support of his motion for summary judgment leads me to conclude that it must be denied.

■ Defendant's first argument, that a voluntary cessation by him of trading for his own account prior to the institution, or threat of institution, of any official investigation of his activities, acts as some form of bar to the present action, is unpersuasive. Where a public agency seeks to enjoin statutorily proscribed activity which has been discontinued, the only proper question, assuming the existence of all other requisites for relief under the statute, is whether there exists a reasonable likelihood that the course of conduct will be resumed in the future. Securities and Exchange Commission v. Culpepper, 270 F.2d 241 (2d Cir. 1959); Securities and Exchange Commission v. Northeastern Financial Corporation, 268 F.Supp. 412 (D.N.J. 1967). Often, in seeking to resolve this question, courts have sought to discover whether the cessation of the activity was voluntary. Reasoning that a cessation induced by impending administrative or civil action is somewhat less than likely to be voluntary, some courts have sought to discover at what point the activity was suspended, whether subsequent to the institution of the action, prior to the institution of the action but subsequent to the commencement of the investigation, or prior to the commence-

4. Wunsch indicates in his affidavit that, "I had traded for my own account for approximately four years, but in May, 1967, I decided that I should stop and I did so." I assume, therefore, that Wunsch commenced trading for his own account sometime in the spring of 1963.

5. Wunsch states that he voluntarily terminated trading for his own account. The Commission, on the other hand, points to an internal investigation commenced at about that time as evidence that Wunsch terminated his course of conduct under fear of impending discovery by his employer.

6. Wunsch states in his affidavit that he was told by the agents that the information would not be used to jeopardize his position "and status with the firm and as a registered representative". The IRS agents, Thomas Howard and Lewis A Martorano, state in their affidavits, however, that Wunsch was only assured that no information disclosed by him would be revealed to anyone at Blyth.

ment of the investigation. See, e. g. Securities and Exchange Commission v. Kamen & Co., 241 F.Supp. 430 (S.D. N.Y. 1963); Securities and Exchange Commission v. Culpepper, 270 F.2d 241 (2d Cir. 1959); Securities and Exchange Commission v. Torr, 87 F.2d 446 (2d Cir. 1937); Otis & Co. v. Securities and Exchange Commission, 106 F.2d 579 (6th Cir. 1939). The answer to the latter question (voluntariness of the discontinuance) is of significance only to the extent of the light which it throws on the former (likelihood of resumption of the violation). Consequently, the voluntariness of the discontinuance (and, thus, the point at which the activity was suspended) cannot of itself be the sole determinant. As the court noted in Securities and Exchange Commission v. Northeastern Financial:

> "Upon a proper showing being made, an injunction may issue regardless of the *mala fides* or *bona fides* of a defendant, and regardless of a defendant's cessation of illegal conduct if the likelihood of the resumption of such conduct is found to exist. The likelihood of future violations must be viewed in light of past conduct."

Thus, not only does the voluntary cessation of illegal activities not deprive a court of the power to hear and decide this case, Hecht & Co. v. Bowles, 321 U. S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); United States v. Trans Missouri Freight Ass'n, 166 U.S. 290, 17 S. Ct. 540, 41 L.Ed. 1007 (1897), but also it does not, standing alone, settle the question of the propriety of injunctive relief.

■ Applying these precedents, it is clear that for at least two reasons the relief sought by the Commission would not be barred in this case. First, contrary to Wunsch's urgings, it is not at all clear that the termination occurred before *some* investigation began.[7] As indicated above, the Commission alleges that an internal investigation by

Wunsch's employers had already been launched concerning the facts underlying this case. Certainly such an investigation and fear of its attendant consequences could conceivably have been as much a factor in Wunsch's decision to terminate his course of conduct as would an investigation by government agents. Second, Wunsch has indicated his desire to return to his work in the securities industry, while denying that his activities constituted fraud or violated the anti-fraud provisions of the Act. Thus, there is between the plaintiff and defendant a continuing controversy as to whether the activities of Wunsch constituted acts prohibited by the securities statutes. As long as this question continues unresolved, there is every likelihood that defendant will again engage in the acts complained of at some future date.

Wunsch submits, as an additional ground for the grant of summary judgment, that he was not given proper warnings relative to his privilege against self-incrimination, right to remain silent, and right to counsel of his choice, or to have counsel appointed, as prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ *Miranda* warnings, of course, are not required where a *Miranda* situation does not exist. Consequently, the assertion of the right to the *Miranda* warning has been generally held to require a showing that the interrogation under attack was undertaken pursuant to a criminal investigation, against a person suspected or accused of a crime, who has been taken into custody or otherwise deprived of his freedom of action by the authorities in any significant way. The statement of the requirement raises the entire litany of now familiar questions. Was this interrogation part of a criminal investigation or reasonably expected to lead to a criminal investigation? See, e. g., United States v. Tur-

---

7. At the very least, this creates an issue of fact on a matter essential to Wunsch's argument.

zynski, 268 F.Supp. 847 (N.D.Ill. 1967); Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). F. J. Buckner Corp. v. NLRB, 401 F.2d 910 (9th Cir. 1968). Was the person interrogated suspected or accused of a crime? Had he been taken into custody or otherwise deprived of his freedom? See, e. g., Mathis v. United States, supra; White v. United States, 395 F.2d 170 (8th Cir. 1968); United States v. Roth, 285 F.Supp. 364 (S.D.N.Y. 1968).

■ It is necessary to examine only one of these questions since it is clear that the interrogation here complained of was non-custodial.[8] Wunsch was interviewed at the Blyth offices, his place of business. He was neither under arrest nor compulsion to attend. He was free to come and go as he pleased, and, indeed, at the conclusion of the interview, he did leave under his own power, without requesting the permission of anyone.

In an attempt to circumvent the custody requirement, however, Wunsch relies on Mathis v. United States, supra, a case decidedly different on its facts. In Mathis, the defendant was incarcerated on a charge unrelated to that concerning which he was questioned:

"The Government also seeks to narrow the scope of the Miranda holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction and in effect it goes against the whole purpose of the Miranda decision which was designed to

give meaningful protection to Fifth Amendment rights. We find nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody. In speaking of 'custody' the language of the Miranda opinion is clear and unequivocal:

'To summarize we hold that when an individual is taken into custody, or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is in jeopardy.' "

This discussion echoes the Court's earlier theme in Miranda—that where an interrogation takes place while a subject is confined or otherwise held subject to the authority of governmental officials, such a detention is so inherently coercive that a "per se" rule of involuntariness is invoked relative to any statements therein made by an accused, regardless of the reason behind his detention. Questioning in one's office, however, presents no such inherently coercive situation where governmental officials have made no move to detain or otherwise limit the interviewee's freedom of movement or action. See White v. United States, 395 F.2d 170 (8th Cir. 1968) and United States v. Roth, 285 F. Supp. 364 (S.D.N.Y. 1968). Consequently, I rule that Wunsch was not entitled to Miranda warnings under the circumstances of this case.

Motion for summary judgment denied in all respects.

So ordered.

8. This is not to suggest, however, that other defects might not also exist in the argument that the strictures of Miranda govern this case. Consequently, the Commission has argued with some cogency that the fact that Wunsch, at the time of his questioning, could at sometime in the future have become (as he subsequent-ly did) the subject of a "punitive" proceeding, does not justify the extension of the Miranda doctrine to this situation, where there was no criminal charge under investigation at that time. See, F. J. Buckner Corp. v. NLRB, 401 F.2d 910 (9th Cir. 1968).