**Homer L. BLACKWELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 15552.

United States Court of Appeals
Eighth Circuit.

May 7, 1957.

James J. Waters, Kansas City, Mo., for appellant.

William O. Russell, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief), for appellee.

Before WOODROUGH, VOGEL, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from judgment imposing sentences upon defendant after his conviction by a jury upon all counts of a 4-count indictment. Each count of the indictment charged defendant with filing a fraudulent income tax return with willful intent to evade income tax due, in violation of section 145(b), 26 U.S.C. Count I charged that defendant filed a false income tax return for 1948, wherein his stated income was $2,391.54 and the tax due thereon was $98.20, whereas, as defendant well knew, his net income was $18,270.83, upon which he owed an income tax of $3,550.48. Count II charged that defendant filed a false income tax return for 1949, wherein he stated that he suffered a loss of $10,603.41 and that no tax was due thereon, whereas, as defendant well knew, his net income was $3,651.91, upon which he owed an income tax of $407.02. Count III charged that defendant filed a false income tax return for 1950, wherein his stated income was $313.60 and no tax was due thereon, whereas, as defendant well knew, his net income was $10,993.-21, upon which he owed an income tax of $1,921.08. Count IV charged that defendant filed a false income tax return for 1951, wherein his stated income was $6,819.31 and the tax due thereon was $1,178.72, whereas, as defendant well knew, his net income was $16,657.65, upon which he owed an income tax of $3,829.30.

During the years involved in the indictment defendant was the sole proprietor of a wholesale furniture business at Kansas City, Missouri, and during such years this business was his only source of income except for a modest amount of interest and dividends. Defendant's records consisted of an inventory file; a record of charge sales showing purchaser, amount of payment, date paid, and discount allowed; check stubs; cancelled checks; bank statements; and a "little black book." Any merchandise not sold on credit was treated as a cash sale whether paid for in currency or by check. The only record of cash sales preserved was a monthly total entered in the little black book. Originally there was an order, invoice, or notation with reference to cash sales. After the monthly total of cash sales was taken and entered in the little black book, such records were destroyed. There was no safe in the office so any currency received was handled and taken care of by defendant.

The internal revenue agents investigating defendant's returns determined that the defendant's records did not properly reflect his income, and proceeded to determine defendant's net income for the indictment years by the net worth method. The revenue agents also offered proof to the effect that the bank deposits during the period under investigation exceeded defendant's reported receipts.

Defendant contends his books properly reflect his income and that he has fully reported his income and paid the tax due thereon. His explanation of the net worth increases claimed by the Government, and the excess of deposits over receipts, is that he had since 1936 a hoard of cash of $80,000 to $100,000, and that this was put into the business as needed.

Defendant was born in 1900. In explanation of his cash hoard he testified that he started earning money when he was in high school, at which time he

was engaged in the "jitney" business, and that he engaged thereafter in various enterprises, including a trucking business, an oil business, a theatre operation, an advertising business, a printing business, and a poster business. He concedes that a number of said ventures were not too successful, and claims his greatest success in the poster business in which he was engaged from about 1926 to 1940. He contends that by 1936 he had accumulated between $80,000 and $100,000 in currency which he kept in a bank deposit box, and that the hoard was still available on December 31, 1947.

In determining defendant's opening net worth, the Government did not credit him with the cash hoard claimed, but gave him credit only for such cash and bank deposits it was able to verify as being on hand on December 31, 1947.

Defendant asserts that the court committed prejudicial error entitling him to reversal in the following respects:

1. Overruling defendant's motion for bill of particulars.

2. Overruling defendant's motion for judgment of acquittal at the close of all the evidence and again overruling such motion when it was renewed after verdict.

3. Errors in admission of Government evidence.

The errors asserted will be considered in the order stated.

In his pre-trial motion for a bill of particulars, which the court overruled, defendant asked that the Government be required to say whether it claimed understatement of "gross income" and, if so, the items thereof, and when, where and by whom, and in what manner, paid to defendant; that the Government be required to say whether it claims overstatement or duplication of deductions and expenses and, if so, to state the amount, items, classes or types, and the dates thereof; and that the Government be required to say whether its determination of defendant's "net income" for the years in question, is based upon "the net worth and expenditures method" and, if so, to state the amount of assets owned,

and of the liabilities owing by, and the net worth of, defendant on January 1 of each of the four years in question, and that the Government state "in what manner it is claimed" the questioned income tax returns "were false and fraudulent."

The Government, in its suggestions in opposition to this motion, filed about seven months before trial, stated that the additional income in each of the years involved in the indictment had been determined by the net worth method. Thus, defendant had timely notice that the Government was employing the net worth method of computation. The indictment advised the defendant of the amount of income the Government was claiming for each of the years involved.

It is well settled that a motion for bill of particulars is addressed to the sound discretion of the court, and that the court's ruling upon such a motion should not be disturbed in the absence of an abuse of discretion. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; McKenna v. United States, 8 Cir., 232 F.2d 431, 435. A number of courts have held that in a net worth prosecution the most that defendant is entitled to prior to trial is the disclosure of the theory or method used by the Government to compute net income. Remmer v. United States, 9 Cir., 205 F.2d 277, 281; United States v. Caserta, 3 Cir., 199 F.2d 905, 910; United States v. Chapman, 7 Cir., 168 F.2d 997, 999.

Defendant relies upon Singer v. United States, 3 Cir., 58 F.2d 74. The Singer case is not a net worth case. Taxpayer's business there was very complicated and the facts presented are very unusual. The Singer case is distinguished in the Caserta case, supra, decided by the same circuit, and the Remmer case, supra. Defendant also relies upon United States v. O'Connor, 2 Cir., 237 F.2d 466, 475. There, the court indicates that the rule requiring a bill of particulars should be liberally construed in net worth cases, and in footnote 10 sets out a number of cases in which a bill of particulars was required. The court, however, found it unnecessary to

decide whether the trial court had abused its discretion in denying the bill of particulars.

■ Upon the record in the present case we do not deem it necessary to determine whether the rule for a bill of particulars should be liberally or strictly construed. Even if the rule is to be liberally construed, we are satisfied that the court did not abuse its discretion in overruling the motion for bill of particulars in the present case. We are not persuaded that the defendant was seriously handicapped in his defense by such ruling. The principal issue was whether the defendant was entitled to have his opening net worth increased by the amount of cash which he claimed he had accumulated and hoarded prior to the years here involved. Defendant was fully informed that the Government was proceeding on the net worth theory. He had many interviews with the investigating agents and had every reason to believe that the Government was not accepting his hoard-of-cash claim. At the trial defendant offered a witness from California who claimed to have seen the cash hoard in 1935. Defendant's business was a modest one, wholly owned and controlled by him. His information as to the nature of his assets during the indictment years was at least equal to that of the Government. No prejudicial error was committed in overruling defendant's motion for a bill of particulars.

Defendant made a motion for judgment of acquittal at the close of all the evidence and renewed such motion after verdict. Defendant contends the court erred in overruling these motions. Defendant first argues that the evidence establishes that his records are adequate and that no error in his records has been pointed out, and contends that his income as disclosed by his records must be accepted.

Many of the problems involved in this case are settled by Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. The situation with reference to the adequacy of taxpayers' books in the Holland case is quite similar to that confronting us here. In Holland the Court states (348 U.S. at pages 131–132, 75 S.Ct. at pages 133–134):

"* * * Petitioners' accounting system was appropriate for their business purposes; and, admittedly, the Government did not detect any specific false entries therein. Nevertheless, if we believe the Government's evidence, as the jury did, we must conclude that the defendants' books were more consistent than truthful, and that many items of income had disappeared before they had even reached the recording stage. * * * To protect the revenue from those who do not 'render true accounts', the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history."

■ In our present case, as previously stated, the defendant preserved only monthly totals of his cash sales. The memoranda upon which the monthly totals were based were not available for checking. The investigation also disclosed that the total deposits exceeded the total receipts. It is true, as defendant contends, that if his books were accurate and complete they would reflect his entire income. There is substantial evidence of an increase in defendant's net worth during each of the years involved in an amount considerably in excess of his reported net income. Defendant's explanation of this increase is the hoarded cash which he placed in the business. If the Government has proven that defendant did not have this hoarded cash, then the only source for the increased net worth above the reported income would be defendant's furniture business. The court, several times in its instructions, advised the jury in effect that, if defendant's records reflected substantially all transactions of importance on the question of income, such records are the best evidence, and in that event the Government could not establish income by the net worth method.

The evidence presented a fact question for the jury. on the adequacy and truthfulness of defendant's records.

■ The Holland case, supra, also makes it clear that the opening net worth must be established with reasonable certainty. Defendant vigorously urges that the Government's evidence has failed to meet this requirement. Particular attack is made upon failure to include defendant's claimed cash hoard. Much of the evidence bearing upon this issue has been set out heretofore. Most of the items upon the opening net worth statement are taken from the defendant's records. The real controversy is over the hoarded currency claim of the defendant. Defendant is largely dependent upon his own testimony to support the cash hoard. One witness testified that the defendant owed him about $300 for a refrigerator, and in 1935 defendant took him to the bank and paid him out of defendant's deposit box. The witness stated that he saw a lot of money in the box, but did not know what, if anything, the box contained besides money, and did not know the denominations of the bills. The witness stated that he would have nothing to substantiate any guess that he might make as to the amount of currency in the box. This evidence is remote and very vague as to the amount of hoarded currency. The bank records indicate that the defendant had made many trips to his deposit box. Evidence was also offered to the effect that defendant was well regarded in the community and that he enjoyed a good credit standing. The witnesses so testifying did not attempt to estimate defendant's net worth. The opening net worth of $73,000 would be sufficient to entitle the defendant to a satisfactory credit rating.

■ The Government's proof to negate defendant's currency hoard claim is largely circumstantial. Defendant's testimony is that he filed his first income tax return in about 1933. Defendant's accountant, on the basis of workpapers in his possession, testified as to defendant's income for the years 1934 to 1947.

During the years 1934 to 1936 defendant suffered a loss. Defendant's highest net income in the 1937–1940 period was $1,706. His highest net income in the 1940–1947 period was $7,500. Defendant purchased a home in 1935 and shortly thereafter mortgaged it for $4,000. He also made a number of bank loans during the period he claimed to have the currency available. Defendant made various financial statements to the First National Bank of Kansas City, Missouri, for credit purposes. Exhibit 76, dated May 15, 1945, shows cash of $18,000 and a net worth of $38,900. Exhibit 77, dated July 3, 1946, shows cash of $15,937.43, bank deposits of $16,754.58, and a net worth of $76,009.21. Exhibit 78, dated November 1, 1948, shows cash of $14,700, bank deposits of $6,830.39, and a net worth of $97,221.25. Exhibit 79, dated August 11, 1950, shows cash of $22,000, bank deposits of $5,764.43, and a net worth of $126,392.58. Exhibit 80, dated December 31, 1950, shows bank deposits of $1,317.26 and a net worth of $118,061.42. The Government's net worth computations as of December 31 of each year are:

| Year | Net Worth |
|------|-----------|
| 1947 | $ 73,078.57 |
| 1948 | 90,327.00 |
| 1949 | 91,855.72 |
| 1950 | 97,020.82 |
| 1951 | 113,124.44 |

During the period from July 3, 1946, to December 31, 1950, the defendant's financial statements given his bank show a net worth increase from $76,000 to $118,000, or approximately $42,000. From December 31, 1947, to December 31, 1950, the increase in net worth, as computed by the Government, amounted to approximately $24,000. The periods covered are not identical, but the trend of increasing net worth is at least as great in defendant's financial statements as in the Government's net worth computations. The opening inventory in the Government's net worth statement credits defendant with cash in bank under business assets in the sum of $9,631.59

and with personal and family deposits aggregating $4,195.48. The jury was properly instructed that it is necessary for the Government to establish opening net worth with reasonable certainty. There is adequate evidence to support the Government's opening net worth statement.

■ Defendant also contends that the Government has failed to investigate leads. There is an obligation on the part of the Government in net worth cases to negate reasonable explanations of the taxpayer inconsistent with guilt. In the Holland case with reference to leads, the Court, among other things, states (348 U.S. at page 138, 75 S.Ct. at page 137):

> "* * * But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant."

See also Kampmeyer v. United States, 8 Cir., 227 F.2d 313, 316.

The leads furnished by the defendant were remote, vague, and indefinite. For the most part there was no reasonable way to check up on defendant's earnings and savings from his multiple ventures, some dating back more than 35 years. Revenue Agent Bennett testified he made such inquiries as he could at the Better Business Bureau, banks, and of various people in the theatre business. Investigation was also made as to the income tax defendant had paid and financial statements given banks.

■ The court submitted to the jury the issue of whether the Government sufficiently investigated any leads furnished by the defendant. The record in this case supports a finding that the Government did all it reasonably could under the circumstances of this case to investigate relevant leads.

■■ Defendant next urges that there is no proof of willfulness. "Willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' " Holland v. United States, supra, 348 U.S. at page 139, 75 S.Ct. at page 137, 99 L.Ed. 150. The test of willfulness is quite fully discussed in Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418. Willfulness involves a state of mind. Direct proof of willfulness is seldom available. A consistent pattern of underreporting large amounts of income or overclaiming deductions and not recording such items on the taxpayer's records is evidence from which willfulness may be inferred. Holland v. United States, supra; Zacher v. United States, 8 Cir., 227 F.2d 219, 224; Canton v. United States, 8 Cir., 226 F.2d 313, 321.

The record in this case contains evidence from which a jury could infer a consistent underreporting of substantial amounts of income. Additionally, defendant admitted failure to report $9,000 in sales in 1949 and $4,000 in 1950. Defendant explained that this was done to offset some deductions which he had overlooked claiming in prior years. The weight to be given defendant's explanation of why he did not report this income was for the jury.

■ Without further prolonging the discussion of the voluminous evidence in this case, we state that we have carefully examined the record, including the original transcript of the evidence, and are convinced that a jury question was presented as to all the essential elements of the crime charged.

Defendant contends that the court committed prejudicial error in receiving in evidence certain Government exhibits. Attack is made upon the admission of Exhibit X. Exhibit X is a chart approximately eight feet high and six feet wide, with red and black lettering, entitled "Summary of Net Worth Increases, Homer L. Blackwell." This exhibit purports to be a chart summarizing the Government's evidence bearing upon the various categories of assets and liabilities of the defendant involved in the computation of defendant's net worth on December 31 of the years 1947 to

1951, inclusive. It is subdivided into 24 items. The chart was placed in the courtroom near the wall, across the room from the jury box. Each item on the chart was covered with a strip of brown paper. Immediately after the Government had offered proof to support an item on the chart, the strip covering such item was removed. After the Government had offered evidence as to all of the items on the chart, it introduced in evidence Exhibit 58 which contained the same information as Exhibit X. Defendant objected to the accuracy and completeness of the chart.

■ Net worth summaries, properly identified and supported by substantial evidence, are admissible in tax fraud prosecutions. Hanson v. United States, 8 Cir., 186 F.2d 61, 67; Canton v. United States, supra, 226 F.2d at page 317. The issue of whether the evidence presented established the net worth for the various years as claimed by the Government was properly submitted to the jury.

Defendant further contends Exhibit X was prejudicial because of its size and constant display in the courtroom. Defendant relies upon Lloyd v. United States, 5 Cir., 226 F.2d 9, and Holland v. United States, supra.

In the Holland case the Court, in speaking of the danger to be guarded against in net worth cases in order to insure an adequate appraisal of the evidence, states (348 U.S. at pages 127–128, 75 S.Ct. at page 131, 99 L.Ed. 150):

"* * * There is great danger that the jury may assume that once the Government has established the figures in its net worth computations, the crime of tax evasion automatically follows. The possibility of this increases where the jury, without guarding instructions, is allowed to take into the jury room the various charts summarizing the computations; bare figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them."

The Lloyd case, after referring to the foregoing admonition in the Holland case, states the general rule to be that the admission of charts is discretionary with the trial court, and that its rulings are subject to review only under a clear showing of an abuse of discretion. The court concedes that the proper use of charts often makes the complex evidence upon which such charts are based more intelligible to the jury, but cautions that a trial court is charged with grave responsibility to insure that an accused is not unjustly convicted in a "trial by charts." [226 F.2d 17.] The Lloyd case was reversed on other grounds, so the court found it unnecessary to determine whether there was an abuse of discretion in the admission of charts.

■ The chart in our present case has stronger evidentiary support than the one used in the Lloyd case and does not have the offensive subtitles used on the Lloyd chart. The court in our present case during the trial cautioned the jury on numerous occasions upon the consideration to be given Exhibit X, stating, among other things:

"* * * an exhibit of this character is admissible but I caution the Jury that this is a Net Worth Statement constructed by Bureau of Internal Revenue personnel and that you are not to give any emphasis to the size of this exhibit any more than you would if you were examining it on a piece of paper of normal size. Undoubtedly the Government's view in putting it on an easel and in this size is merely for the convenience of the Jury in seeing it."

"But I don't want the Jury to get any wrong idea about what this is. This is just a reflection up to now of what the witnesses have testified to, if you so believe, and you are to pay attention to and be governed by the evidence and not by what is on this exhibit, and if you don't think the testimony sustains this exhibit, then you pay attention to the evidence and not to this exhibit, you understand?"

The court did not permit the chart to be taken into the jury room. Under the circumstances disclosed by the record in this case, the court did not abuse its discretion in admitting Exhibit X.

■ Defendant also complains of the admission of Exhibits 85–88, which are Revenue Agent Concannon's computations of tax due based upon an assumed net income. Upon objection to said exhibits, the court stated:

"I will admit these exhibits only if and providing it is clearly and definitely understood that the figures used are only assumptions; otherwise the objection will be sustained. But if it may be clearly understood that the figures used are assumptions and assuming those figures to be true, the tax would be so much, then that is proper."

Government counsel accepted such condition. The court carefully insisted throughout Concannon's examination that his computation of tax liability be based upon an assumed net income. The net income assumed was the amount of increase in net worth for each of the years as disclosed by Exhibit X. The issue of whether the Government had proven net income in the amount claimed was left to the jury's determination. Thus the Government was doing no more than asking the witness a hypothetical question to the effect, "assuming the net income of so many dollars for the year in question, how much would the tax be?" It is within the trial court's discretion to permit such expert testimony. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Zacher v. United States, supra, 227 F.2d at page 228.

Finally, defendant claims error in the admission of Exhibit 90. This exhibit was a copy made by Agent Gable of a paper found in the files of defendant's accountant. Gable discovered the instrument, which he copied, while examining, with defendant's consent, defendant's tax file in the accountant's office. The exhibit purports to list at least some of the assets of the Independent Poster Company for the years 1936 to 1939, the assets totaling less than $2,000 in each year. No listing of inventory appears in the exhibit. No showing was made as to the origin or purpose of the instrument of which Exhibit 90 purports to be a copy or how such instrument got into accountant's file or who made it. The instrument was not signed by defendant, and there is no evidence that he ever saw it. The offer of Exhibit 90 was objected to because of the indefiniteness of what was copied. The court by its remarks indicated that the question of proper identification of the exhibit had been raised.

■ We do not believe the instrument of which Exhibit 90 purports to be a copy was sufficiently identified to authorize the admission of Exhibit 90. See Olender v. United States, 9 Cir., 210 F.2d 795, 805, 42 A.L.R.2d 736.

■ The question now arises as to whether the erroneous admission of Exhibit 90 constituted prejudicial error. Errors which do not affect substantial rights shall be disregarded. Rule 52(a), Rules of Criminal Procedure, 18 U.S.C. The test for determining whether error is prejudicial is set out in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557. The error is prejudicial unless the reviewing court can say with fair assurance that the judgment of the jury was not swayed by the error. In Davis v. United States, 8 Cir., 229 F.2d 181, we quote with approval from Williams v. United States, 8 Cir., 265 F. 625, as follows (229 F.2d at page 187):

"Whether prejudice results from the erroneous admission of evidence at a trial is a question that should not be considered abstractly or by way of detachment. The question is one of practical effect, when the trial as a whole and all the circumstances of the proofs are regarded."

We now look to the facts and circumstances of this case in the light of the foregoing standards.

The basic fact issue for the jury was whether defendant had the $100,000 currency hoard which he claimed he had accumulated by 1936, and whether such hoard was still on hand on December 31, 1947. Defendant had claimed that the poster business was a most profitable business. The defendant had claimed on direct examination that in 1936 he had an inventory that cost him over $100,000. Upon cross-examination he was unable to estimate the net worth of the poster business in 1936, and couldn't say whether such net worth was $50,000 or $5,000. Defendant conceded that after talking pictures came in in the late 1920's the poster business was practically ruined and that by 1936 the business was unprofitable. Defendant's income tax returns reflect that at least from 1934 until the sale of the poster business in 1940 the poster business was not profitable. In exchange for the poster business in 1940 defendant received a 5-year employment contract from the purchaser, calling for a salary of $8,000 a year.

To refute the cash hoard claim, the Government relied principally upon defendant's income tax returns and the financial statements defendant had given to banks, and the fact that during the period defendant claimed the cash hoard he borrowed money in substantial amounts on numerous occasions and that he had mortgaged his home.

The amount of the inventory of the poster business in the 1936 to 1940 period had little, if any, bearing upon the determination of defendant's net worth on December 31, 1947. There was ample evidence to support the Government's net worth computation without considering Exhibit 90. Upon the record before us we can say with reasonable assurance that the admission in evidence of Exhibit 90 had no substantial influence upon the verdict arrived at by the jury, and hence we conclude that the admission of Exhibit 90 could not constitute reversible error.

The court gave the jury elaborate instructions which were very fair to the defendant upon the net worth issue. An examination of the entire record convinces us that defendant had a fair trial and that the trial court has committed no prejudicial error.

The judgment appealed from is affirmed.