Jack C. PING, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19339.

United States Court of Appeals
Eighth Circuit.

Feb. 28, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1784.

John A. McClintock, of Hansen, Wheatcraft & McClintock, Des Moines, Iowa, for appellant.

James P. Rielly, U. S. Atty., Des Moines, Iowa, for appellee; Jerry E. Williams and Claude H. Freeman, Asst. U. S. Attys., on the brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant was convicted on a two count indictment for willfully filing false individual income tax returns for 1962 and 1963 in violation of § 7206(1) of the Internal Revenue Code of 1954. The indictments alleged that the defendant had understated his gross income by $13,757 in 1962, and $9,000 in 1963. He received a sentence of imprisonment of one year on each count—the sentences to run concurrently. Two questions are raised on this appeal: (1) Whether the District Court erred in refusing to exclude from evidence an incriminating statement obtained from the defendant by a Special Agent of the Internal Revenue Service; and (2) whether the District Court erred in admitting summaries of the defendant's checking accounts for 1962 prepared by the same Special Agent. We answer both questions in the negative.

A brief summary of the evidence relating to the alleged understatement of

gross income will be helpful in understanding the defendant's contentions.

The evidence established that the defendant reported only $14,987 out of a gross income of $28,744 in 1962. The unreported income consisted of $3,750 received as wages from the Hales and Hunter Company and $10,000 received as a commission from Todd & Sargent, Inc., for assisting in locating financing for the construction of a feed mill. The evidence also established that the defendant reported $12,224 out of a gross income of $21,224 in 1963. The unreported income consisted of a $9,000 commission received from Todd & Sargent, Inc.

The defendant testified that he failed to report the $3,750 because he did not receive his W–2 form from the Hales and Hunter Company. He claimed that he failed to report the commissions because they had been used by him to defray necessary and proper business expenses incurred in securing the financing.

## THE ADMISSIBILITY OF THE DEFENDANT'S STATEMENT

█ The defendant was first advised that his income tax returns were being investigated in a letter written May 27, 1965, by Special Agent Dale T. Robinson. Robinson correctly identified himself, but did not advise the defendant that the investigation was criminal in nature.

On August 23, 1965, Robinson interviewed the defendant in Robinson's office. The entire interview was transcribed. At the outset, Robinson informed the defendant that he was not required to answer any questions or furnish information that might tend to incriminate him. During the course of the interview, the defendant inquired about his right of having an attorney present. Robinson informed him that he had such a right and asked him if he desired to exercise it. The defendant indicated that he did not desire to have counsel present. The defendant conceded during the interview that he may have used a portion of the commissions for personal expenses.[1]

On October 25, 1965, a Group Supervisor in the Intelligence Division called the defendant, advised him that the Division was considering instituting a criminal proceeding and invited him to a conference in the Jackson, Mississippi, office of the Intelligence Division. The Supervisor informed the defendant that he could bring an attorney and that he could present evidence or offer explanation with respect to the alleged violations. On November 2, 1965, the defendant and his attorney kept the appointment with the Group Supervisor. The defendant and his counsel were shown a copy of the August 23rd transcript with the request that they review it, correct errors, initial any corrections and

---

1. At trial, the defendant denied using any part of the commissions for personal expenses. He also testified that he had spent nearly $4,000 more in arranging financing that he had received. He produced a record book which tended to support his testimony.

Both assertions were in direct conflict with statements given during the interview. The existence of a written record of expenditures had also been denied during the interview.

During the interview, he gave the following answers to questions asked by Agent Robinson:

"Q. Did you incur any expenses for which you were not reimbursed?

"A. Oh, no, I don't think so, I think he amply—

"Q. Would the expenses that you incurred cover also your personal living expenses?

"A. Yes, some of them would, yes. I'm sure that's so. However, my wife had some money and again when you deposited money and so on and so forth and she had some money, we sold some stock, or she sold a little stock during that time, she had some cash before we were married, and we commingled, I'm sorry to say, these funds and it would be awfully hard to separate 'um.

\* \* \* \* \*

"Q. And again, did you keep a record of these expenditures?

"A. I'm afraid not."

sign it. After examining the statement for a half hour, the defendant signed it. Before doing so, the following paragraph was added by the defendant's counsel:

"I have carefully read the foregoing statement consisting of thirty-seven (37) pages, including this page, which is a transcript of questions which were propounded to me and my answers to such questions on August 23, 1965, at Gulfport, Mississippi, relative to my income tax liability. I believe that the interview is correctly transcribed but I also recognize that many of my answers were vague and confusing, primarily because of my efforts to answer without full recollection of the facts, and that some of them should be corrected, explained or clarified. I have initialed each page of the statement for identification."

The defendant does not contend that his statement was obtained by misrepresentation, fraud or coercion. He argues, rather, that the statement was not a voluntary one because he was not fully advised of his rights under the Fifth and Sixth Amendments to the Constitution in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

We are convinced here, as we were in Cohen v. United States, 405 F.2d 34 (8th Cir. 1968), that the defendant's statement was a voluntary one as that term was understood pre-*Escobedo* and *Miranda*; and as the defendant was not in custody, it was unnecessary for the Special Agent to give warnings other than those given. Cohen v. United States, *supra*; Muse v. United States, 405 F.2d 40 (8th Cir. 1968); White v. United States, 395 F.2d 170 (8th Cir.), cert. denied, Kubik v. United States, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed. 115 (1968). In those cases, as here, the defendant was interrogated in the Special Agent's office. We held in them that this fact was not sufficient to establish a custodial situation. We are not persuaded to change that opinion.

## THE ADMISSIBILITY OF THE SUMMARIES

The defendant contends that the trial court erred in receiving in evidence three summaries prepared by Robinson which purported to be an analysis of the defendant's two checking accounts. The first summary was described as an analysis of the defendant's checking account in the Farmers and Merchants Savings Bank, Burlington, Iowa, for 1962, and the second was a similar analysis of the defendant's account in the Farmers National Bank of Winfield, Iowa, for the same year. Each summary was prepared from monthly bank statements and cancelled checks which had been previously received in evidence. The columns were captioned: statement date; date of check; amount; deposit; balance; check number; payee; and *possible business use*. The third summary was essentially a synopsis of the other two and included a caption entitled "Possible Business Use." The summaries purported to show that of $10,300 received by the defendant in 1962, he had expended only $3,300 for possible business purposes and had expended the balance for personal items.

The defendant objected to the introduction of the summaries on the grounds that the cancelled checks and the statements constituted the best evidence of the defendant's financial transactions, and that it was error to permit Robinson, a non-expert, to give his opinion as to the use of the funds—an opinion which was expressed by the inclusion of the "Possible Business Use" column.

Monthly bank statements and cancelled checks for 1963 were also received in evidence but summaries similar to those for 1962 were not offered in evidence. Thus, we might in view of concurrent sentences, refuse to consider the admissibility of the 1962 summaries and sustain the defendant's conviction on the basis of the 1963 count. Wangrow v. United States, 399 F.2d 106 (8th Cir.),

cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968).

We also note the possibility of sustaining the 1962 count on the basis of the defendant's failure to report the wage payment of $3,750—a sum which was not included in the summary. The defendant's only defense for failing to pay a tax on this sum was that he had not received a W–2 form from his employer —a defense the jury was free to disbelieve.

We consider the propriety of receiving the 1962 summaries in evidence out of an abundance of caution. The evidence as to the two counts was closely interrelated. The fact that the defendant's failure to report ran over a period of two years may also have been considered by the jury in finding that the defendant's acts were willful. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1939); Blackwell v. United States, 244 F.2d 423, 429 (8th Cir.), cert. denied, 355 U.S. 838, 78 S.Ct. 49, 2 L.Ed.2d 51 (1957).

If the column captioned "Possible Business Use" had been excluded from the summaries, their admissibility would be clear. Lumetta v. United States, 362 F.2d 644, 645 (8th Cir. 1966); Blackwell v. United States, supra, 244 F.2d at 430; Hoyer v. United States, 223 F.2d 134, 138 (8th Cir. 1955); Hanson v. United States, 186 F.2d 61, 67 (8th Cir. 1950). See, 4 Wigmore, Evidence § 1230 (3d ed. 1940). The use of such conclusionary statements has been questioned and might better have been omitted here:

" * * * Whenever possible, * * * charts should be confined in their prep-

aration to strictly mathematical computations, subject to detailed explanation upon the trial by the testimony of expert government witnesses, and they should not be encumbered by such impressive, conclusionary captions as * * * 'Unreported Net Income * * *', 'Income Tax Unreported and Unpaid * * *', such as were used on the Government charts here in dispute. While a prosecution witness may testify as to such conclusions from his mathematical computations, we think the danger in permitting the unrestricted use of such phrases upon charts results from a jury's natural tendency to accept such unsworn, conclusionary verbiage as authentic, primary proof, instead of purely in summarization and explanation of sworn testimony or authenticated documentary evidence."

Lloyd v. United States, 226 F.2d 9, 17 (5th Cir. 1955). See also, Holland v. United States, supra, 348 U.S. at 128, 75 S.Ct. 127.

Nevertheless, a careful review of the record convinces us that its inclusion did not prejudice the substantial rights of the defendant. Rule 52(a), Fed.R.Crim.P. The summaries were prepared in pencil on ordinary ledger paper and were not likely to have imparted an impression of authenticity to the jury. Also, the court carefully instructed the jury [2] as to the use of the summaries. In addition, the evidence as to the defendant's guilt was clear and convincing.

Affirmed.

2. "Summaries prepared by the special agent have been admitted in evidence. They are received for the purpose of explaining facts disclosed by books, records, and other documents which are in evidence in the case. However, such charts or summaries are not in and of themselves evidence or proof of any facts. If such charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, the jury should disregard them.

"In other words, such charts or summaries are used only as a matter of convenience; so if, and to the extent that, you find they are not in truth summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely."