**UNITED STATES of America,**
**Plaintiff,**

v.

**Lawrence POTTS, Defendant.**
**No. 69–CR–45.**

United States District Court,
E. D. Wisconsin.
Jan. 18, 1971.

---

David J. Cannon, U. S. Atty., Milwaukee, Wis., for plaintiff.

Carl W. Kuehne (Kaftan, Kaftan, Kaftan & Kuehne), Green Bay, Wis., for defendant.

## DECISION

MYRON L. GORDON, District Judge.

Counts I, II, and III of the indictment charge the defendant with tax evasion for the years of 1962, 1963, and 1964, in violation of 26 U.S.C. § 7201. Count IV charges that the defendant filed a false tax return for the year 1964, in violation of 26 U.S.C. § 7206(1). Following a trial to the court, both sides submitted briefs setting forth their respective positions.

## COUNTS I, II, and III

The government bases its prosecution upon the net worth theory of proof, and both parties agree that Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 250 (1954), is controlling on the use of this technique. The method used in a net worth prosecution is set forth in *Holland* as follows (page 125, 75 S. Ct. page 130, 99 L.Ed. 150):

"In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the

resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. In addition, it asks the jury to infer willfulness from this understatement, when taken in connection with direct evidence of 'conduct, the likely effect of which would be to mislead or to conceal.' Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418."

The defendant in the present action operated a cheese factory in eastern Wisconsin during the years in question. The government contends that the defendant's net worth as of December 31, 1961, was $371,908.29. Among the assets included by the government in this opening net worth figure is a cheese inventory valued at $68,978.86 that was stored in Manitowoc and De Pere warehouses at the end of 1961. The defendant does not contest the inclusion of the value of this cheese inventory as a part of the opening net worth figure.

However, the defendant argues that the government's opening net worth figure fails to include $40,197.36 worth of cheese that he claims was stored in other coolers owned by him and located in, and near, his factory. Indeed, the value of the defendant's total cheese inventory as of December 31, 1961, is the only disputed figure in the government's net worth calculations. This court must decide whether the government has clearly proved that the opening inventory was of a value of $68,978.86 rather than the $109,176.22 urged by the defendant. The defendant does not oppose the government's contention that any cheese inventory at the end of 1961 was disposed of during the course of 1962.

The government maintains that the defendant's net worth increased over the period in question to $451,954.33 as of December 31, 1964, and that his cor-

rected taxable income for each of these years was:

1962 — $23,918.45
1963 — 37,832.55
1964 — 42,131.93

The amount of taxable income which Mr. Potts actually reported was:

1962 — $21,626.13
1963 — 24,537.03
1964 — 29,132.05

Thus, the government argues that the additional taxable income for each of the years in question is:

1962 — $ 2,292.32
1963 — 13,295.52
1964 — 12,999.48

The government originally contended that the defendant's cheese inventory at the end of 1961 was in an amount valued at $57,265.67. On the basis of testimony and evidence presented at the trial, however, the government now argues, as already stated, that the inventory was in an amount valued at $68,978.86, for a difference of $11,713.19 from the original figure.

The defendant argues that if the $40,197.36 worth of additional cheese inventory which he alleges was on hand in his on-the-premises coolers is added to the government's corrected opening net worth figure, the result is a net worth of $412,105.65 as of December 31, 1961. If this adjusted net worth figure is subtracted from the government's December 31, 1964, net worth figure, the difference represents an increase in net worth of only $39,848.68 over the three-year period. This means, the defendant says, that he over-reported his income over the three years by $11,609.64. Furthermore, he maintains, if the $11,609.64 is subtracted from the government's "error" of $11,713.19, he under-reported his income by only $103.55. Either result, he argues, hardly provides evidence of "consistent understatement of income" that would support the element of willfulness inherent in a charge of violating § 7201.

■ Holland v. United States, 348 U. S. 121, 75 S.Ct. 127, 99 L.Ed. 150

(1954), clearly shows that the government must establish the taxpayer's opening net worth with reasonable certainty. Furthermore, *Holland* states that "[also] requisite to the use of the net worth method is evidence supporting the inference that the defendant's net worth increases are attributable to currently taxable income." 348 U.S. at 137, 75 S.Ct. at 136, 99 L.Ed. 150. Finally, the burden of proof remains on the government to prove each and every element of the offense charged, beyond a reasonable doubt. In my opinion, all of these requirements have been met in the case at bar.

The defendant argues that a principal flaw in the government's reliance on the net worth theory of proof results from the government's failure to check the "lead" allegedly furnished by the defendant as to the presence of large amounts of cheese in the defendant's coolers at the end of 1961. On the government's duty to check relevant leads, the court in *Holland* had this to say (page 135, 75 S.Ct. page 135):

> "When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer— leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence."

The defendant contends that the lead furnished to the government was "reasonably susceptible of being checked."

The defendant introduced numerous witnesses who testified to the presence of large amounts of cheese in storage in the defendant's own coolers in the fall and winter of 1961. In addition, several of these witnesses testified that, although over eight years had passed, they remembered that the defendant was storing cheese because other cheesemakers were doing the same thing, since

cheese prices were low during that period.

The credibility to be accorded the witnesses in the present action is particularly within the province of the court. It is my conclusion that any leads furnished the government in this case were "remote, vague, and indefinite." See Blackwell v. United States, 244 F.2d 423, 429 (8th Cir. 1957), cert. denied, 355 U.S. 838, 78 S.Ct. 49, 2 L.Ed.2d 51 (1957).

I am aware that, as stated in *Holland,* use of the net worth theory of proof "require[s] the exercise of great care and restraint." (348 U.S. page 129, 75 S.Ct. page 132, 99 L.Ed. 150). In my opinion, however, the government has proved the defendant's net worth with a reasonable certainty. While choosing not "to remain quiet at his peril", *Holland,* page 139, 75 S.Ct. page 137, 99 L. Ed. 150, the defendant has not introduced sufficient evidence to refute the government's opening net worth figure.

The defendant introduced no business records to corroborate his contention that he had an additional $40,000 worth of cheese in storage in his own facilities at the end of 1961. While the defendant introduced several witnesses who testified to the storage of cheese by the defendant, I find their testimony in this regard unpersuasive.

As already stated, it is necessary for the government to provide evidence "supporting the inference that the defendant's net worth increases are attributable to currently taxable income." *Holland,* page 137, 75 S.Ct. page 136, 99 L.Ed. 150. In United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958), the court stated:

> "In *Holland* we held that proof of a likely source was 'sufficient' to convict in a net worth case where the Government did not negative all the possible nontaxable sources of the alleged net worth increase. This was not intended to imply that proof of a likely source was necessary in every case. On the contrary, should all pos-

sible sources of nontaxable income be negatived, there would be no necessity for proof of a likely source."

■ The government contends that a likely source of the increase in the defendant's net worth was the evasion of his tax payments for the years for which he has been indicted. This, the government argues, was largely accomplished through the overstatement of expenditures for supplies during this period. This also provides the basis for the tax fraud allegation of count IV of the indictment. Without discussing the elements of this alleged fraud at this point, I am convinced that the government has succeeded in proving a "likely source" of the defendant's increase in net worth, thus obviating the need for the government to negative all nontaxable sources of net worth increase. See United States v. Holovachka, 314 F.2d 345, 357 (7th Cir. 1963).

■ An additional item of proof in a net worth prosecution is the defendant's willfulness in evading payment of the tax alleged to be due. The test of willfulness is set forth in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). While direct proof of willfulness is rarely available, a "consistent pattern of underreporting large amounts of income, and of the failure * * * to include all * * * income in [the defendant's] books and records" is evidence from which willfulness may be inferred. Holland, 348 U.S. page 139, 75 S.Ct. page 137, 99 L.Ed. 150; Blackwell v. United States, 244 F.2d 423, 429 (8th Cir. 1957), cert. denied, 355 U.S. 838, 78 S.Ct. 49, 2 L.Ed.2d 51 (1957). Furthermore, "[It] is not necessary to prove the exact amount of the deficiency averred in the indictment. It is sufficient to prove that a substantial amount of tax liability has been willfully averted". United States v. Doyle, 234 F.2d 788, 794 (7th Cir. 1956), cert. denied, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956).

■ For the reasons stated above, the defendant will be found guilty of the charges contained in counts I, II, and III of the indictment.

## COUNT IV

Count IV of the indictment charges that the defendant filed a tax return for 1964, knowing it to be false, in violation of § 7206(1). The government contends that the defendant overstated his deductible expenses for that year in an amount in excess of $8000.

On April 7, 1966, Dealo Hecker, a revenue agent with the Internal Revenue Service who had been assigned to audit the defendant's 1964 tax return, came to the defendant's factory and asked to see the records used in preparing the 1964 return. The defendant's records consisted of yellow sheets on which had been listed items of expenditure that Mr. Hecker said corresponded to those on the defendant's tax return. However, at least 32 checks produced by the defendant in an attempt to corroborate expenditures on the yellow sheets did not agree with such expenditures, for the yellow sheets reflected an overstatement of the actual expenditures by over $8000. After spending approximately five hours with the defendant, the Internal Revenue agent returned to his office and on the next day referred the defendant's case to the intelligence division.

■ The defendant argues that the testimony of Mr. Hecker is inadmissible because of the agent's failure to give any *Miranda* warnings before he began his investigation. It is my opinion that this contention must be rejected.

The agent's interview with the defendant predated the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by over two months. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966); United States v. Dickerson, 413 F.2d 1111, 1117 (7th Cir. 1969). Also, the interview did not involve a custodial situation such as existed in United States v. Lackey, 413 F.2d 655 (7th Cir. 1969).

The defendant's case had not yet been referred to the intelligence division at the time of the agent's interview. In *Dickerson,* supra, the court said at page 1116 of 413 F.2d:

"Our conclusion is that *Miranda* warnings must be given to the taxpayer by either the revenue agent or the special agent at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division."

However, as to the application of its decision to earlier, non-custodial interrogations, the court in *Dickerson* stated (page 1117):

"In recognition of the fact that this holding represents a departure from the present state of the law, and a new implementation of the *Miranda* policy, and in accordance with the criteria set forth in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 * * * We have determined that this decision should be given a prospective application."

Other cases which reject the view that revenue agents are required to give *Miranda* warnings are: United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970); United States v. Brevik, 422 F.2d 449 (8th Cir. 1970); United States v. Browney, 421 F.2d 48 (4th Cir. 1970); and Simon v. United States, 421 F.2d 667 (9th Cir. 1970).

The defendant argues that Mr. Hecker's examination of his records was only a cursory one and failed to take into account the possibility that some of the expenditures listed on the yellow sheets were in reality either several expenditures that had been lumped together or represented an overlap of expenditures for supplies and for items that should have been placed in another category.

In addition, the defendant asks this court to consider his relative lack of education and the fact that he had to work long hours in his business.

■ Notwithstanding the defendant's contentions, however, the evidence of the defendant's fraud is clear and convincing. See Ping v. United States, 407 F. 2d 157 (8th Cir. 1969), cert. denied, 395 U.S. 926, 89 S.Ct. 1784, 23 L.Ed.2d 244 (1969). The list of items referred by Mr. Hecker to the intelligence division, and admitted as plaintiff's exhibit 120 at the trial, shows that the defendant overstated his expenditures by changing or adding a digit to the figure reflecting the actual expenditure, thus increasing the check figures by $50 to $1000. Such conduct can hardly be called inadvertent or unintentional.

Section 7206(1) states, in part:

"Any person who—

(1) Declaration under penalties of perjury.—Wilfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter * * * shall be guilty of a felony. * * *"

I am convinced that the government has proved all the elements of the offense charged beyond a reasonable doubt and will find the defendant guilty of the charge contained in count IV of the indictment.

The findings of guilty to the four counts referred to above will be imposed on the defendant at a hearing in the courtroom to be held on February 1, 1971, at 9:30 A.M. Defendant's counsel are instructed to arrange for Mr. Potts' presence at that time.